Jordan Royce MATTHEWS, Jr., Appellant,

v.

Carol Kay MATTHEWS, Appellee.

No. 01–85–01015–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 4, 1986.

Rehearing Denied Feb. 19, 1987.

Earle S. Lilly, Piro & Lilly, Houston, for appellant.

Burta Rhoads Raborn, Barbara K. Runge, Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

SAM BASS, Justice.

Our opinion issued September 18, 1986, is withdrawn, and the following is substituted. Appellant's motion for rehearing is overruled.

This was a divorce suit and a suit affecting the parent-child relationship. The primary issue surrounds an Indenture for the Partition of Community Property ("the indenture").

The appellee alleged that the indenture was void based on fraud, undue influence, duress, invalid partition and exchange, public policy, and breach of fiduciary duties. After a non-jury trial, the court set aside the indenture and found that it was procured by duress.

Appellee signed the indenture on June 20, 1980, and appellant signed it on June 21, 1980. The appellee's attorney, Williams, testified that he first consulted with appellee in July 1979, regarding a proposed divorce from appellant. Williams had no further contact with appellee until May 29, 1980, when she retained him to represent her in a divorce action against appellant. On this same day, all the necessary paperwork was prepared to initiate the divorce action. Appellee's contact with, and retention of, Williams was unknown to appellant. On May 28, 1980, one day before appellee retained Williams, she and the two children had left the house and were staying in a motel.

On June 1, 1980, appellee and the children returned home, and she instructed Williams not to file suit. On June 16, 1980, appellee consulted Williams regarding the partition. He testified that he made no

recommendation to her. On June 25, 1980, appellee informed Williams that the family had reunited and that his services were no longer required.

Mrs. Gross, a psychotherapist, testified that in June 1980, she had been counselling appellee. Prior to a meeting with appellant and appellee, Gross received a call from appellant stating that his wife was abusing medication, that she had left with the children, that she had stolen money from the company's safe, and that he was having detectives go after her. In June 1980, before the signing, Gross learned that the couple was separated, that appellant had taken the couple's son and moved in with his parents, and that the couple was in the process of making a separation agreement. She testified that appellee seemed confused, and that appellee confessed the alleged theft. Gross had no contact with appellee after June 9, 1980.

Another attorney, Ogier, testified that he met with appellant and appellee in June 1980 regarding the partition agreement. He said that his primary function was in preparing the agreement and not rendering advice on its benefits. He testified that appellee seemed calm and normal, that she never indicated to him that she believed the agreement to be fraudulent, and that, in his opinion, both parties were fully aware of what they were doing.

Appellee testified that during the time period before the signing, appellant threatened that if she did not sign the indenture she would never see her son again. She testified that she had possession of their daughter and that appellant had possession of their son.

Appellee testified to the following:
Q. Did you fear anything, if you didn't sign the document as he said and have it on his desk by Friday?
A. I feared the worst.
Q. Being what?
A. Loss of my child.
Q. Was there ever any discussion between you and Mr. Matthews relative to custody litigation?
A. Yes.
Q. Were you in fear of that?
A. Yes.
Q. Why?
A. I was just afraid that he would do it.

On cross-examination, appellee testified that her attorney, Williams, had advised her to not sign the agreement and that she signed the agreement four days later. Appellee testified that, during the four day period, she was not, physically or otherwise, abused by appellant. She testified that their son had gone voluntarily with appellant and that she was able to talk to her son on the telephone. She knew that he was all right; however, she testified that the only reason she signed the agreement was to prevent appellant from getting custody of her son. During May and June of 1980, the couple was using cocaine and alcohol, and there were disputes over company business and assets.

A third attorney, Lindsay, testified that appellee consulted him in October 1982, concerning a divorce. Although appellee told him about the 1980 partition agreement, the extent of her reference to it was that she wished she had not signed it.

The trial court made findings of fact and conclusions of law, the relevant portions of which are as follows:

(8) The parties signed a document entitled Indenture for the Partition of Community Property ("Indenture") on or about June 20–21, 1980, after approximately 2 months of extreme marital stress, during which period parties attending (sic) mental health counselling.

(9) During said period Petitioner and the children separated from Respondent. Sometimes (sic) after the initial separation Respondent took possession of the son, just turned 12 years of age, against the will of Petitioner and refused to let her see him, talk with him, or know of his whereabouts and threatened to continue to do so.

(10) During said period Respondent made continual threats against Respondent (sic) relating to her drug use, stealing of company money and assets, criminal prosecution, pursuing her with the use of detectives, issuance of a warrant

for her arrest, and matters relating to the son.

(11) Petitioner believed and feared the threats and conduct of Respondent. Respondent made said threats and engaged in said conduct for the purpose of coercing Petitioner into signing said Indenture for his personal gain.

(12) Petitioner's free will was destroyed by the acts and threats of Respondent and she signed said Indenture because of them. Said Indenture was procured by duress.

(13) Respondent's testimony relating the facts and circumstances surrounding the period of April through June, 1980 inclusive was not credible.

### Conclusions of Law

(6) The indenture for the partition of community party should be and is set aside, vacated, and held for naught for all purposes.

Appellant's second through sixth points of error contend that the trial court's fact findings eight through twelve are supported by no evidence and are against the great weight and preponderance of the evidence.

We hold that there is sufficient evidence to support fact findings eight through twelve, as they relate to appellant's threat to institute custody litigation. Therefore, it is not necessary to decide whether other acts and threats by appellant are also supported by the record. Points of error two through six are overruled.

Appellant's first point of error contends that the trial court erred as a matter of law in concluding that the indenture should be set aside, and that such finding is against the great weight and preponderance of the evidence. Appellant's seventh point of error contends that the trial court erred in finding that the partition was procured by duress, because any evidence on which the trial court relied does not conform to the legally accepted definition of duress. We evaluate appellant's claim in light of the threat to initiate custody litigation.

What constitutes duress is a question of law for the court. However, whether duress exists in a 'particular situation is a question of fact dependent on all the circumstances, including the mental effect on the party claiming duress. *Lewkowicz v. El Paso Apparel Corp.*, 614 S.W.2d 198, 200 (Tex.Civ.App.—El Paso), *rev'd on other grounds*, 625 S.W.2d 301 (Tex.1981); *Sanders v. Republic National Bank*, 389 S.W.2d 551, 554 (Tex.Civ.App.—Tyler 1965, no writ). Texas courts have uniformly held that:

> There can be no duress unless there is a threat to do some act which the party threatening has no legal right to do. Such threat must be of such character as to destroy the free agency of the party to whom it is directed. It must overcome his will and cause him to do that which he would not otherwise do, and which he was not legally bound to do. The restraint caused by such threat must be imminent. It must be such that the person to whom it is directed has no present means of protection. (citation omitted) Where a demand made is wrongful or unlawful, and it is necessary for the party making such demand to resort to the courts to enforce same, there is no duress, for the one upon whom demand is made has adequate means of protection, and there is no imminent restraint. (citation omitted) But where the party making such demands has, or is supposed to have the power to injure the business or property interest of the one upon whom such demand is made, without resort to the courts to enforce the demand, and threatens to do an act which would cause such injury and which he has no right to do, and thereby induces a compliance with his demand against the will of such party through fear of injury to his business, property interest, such threats amount to duress, if it appears that the party making such demand and threat ought not in good conscience to retain the benefit received by reason thereof. (citation omitted).

*Dale v. Simon*, 267 S.W. 467, 470 (Tex. Comm'n.App.1924, judgmt. adopted); *State National Bank of v. Farah Manufactur-*

*ing Co.*, 678 S.W.2d 661 (Tex.App.—El Paso 1984, writ dism'd by agr.).

■ It is never duress to threaten to do that which one has a legal right to do. *Ulmar v. Ulmar*, 139 Tex. 326, 162 S.W.2d 944 (1942); *Fischer v. Richard Gill Co.*, 253 S.W.2d 915 (Tex.Civ.App.—San Antonio 1952, writ ref'd). However, a vice arises when one employs extortive measures or, lacking good faith, makes improper demands. *Sanders*, 389 S.W.2d at 554, 555.

The record reflects that the couple was having severe marital problems. Although appellee could have resorted to the courts to prevent appellant from permanently depriving her of custody, the record establishes that appellant was successful in preventing her from having any contact with their son, other than by telephone, without appellant having to resort to the courts to accomplish his objective. It is significant that when appellee agreed to appellant's demands on June 20, 1980, the family reunited, and that on June 25, 1980, appellee terminated Williams' representation because the family had reunited.

■ The indenture partitioned title to a significant portion of the community assets to appellant, in exchange for relieving appellee of responsibility for the debts relative to the assets. Appellee received no assets from the partition. Although the equality of the division is not necessarily fatal to the agreement, *Morgan v. Morgan*, 622 S.W.2d 447 (Tex.App.—Beaumont 1981, no writ); *Dalton v. Pruett*, 438 S.W.2d 926 (Tex.Civ.App.—Texarkana 1972, no writ), it is a factor to be considered in evaluating appellee's claim of duress.

■ Appellant and appellee, as husband and wife, owed each other special fiduciary duties. *Carnes v. Meador*, 533 S.W.2d 365 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r. e.). The fiduciary relationship requires that appellant demonstrate the basic fairness of the transaction. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508 (Tex.1980).

Indeed, Texas Family Code section 5.45 (Vernon 1981) requires that:

In any proceeding in which the validity of a provision of an agreement, partition, or exchange agreement made under this subchapter is in issue as against a spouse or a person claiming from a spouse, the burden of showing the validity of the provision is on the party who asserts it. The proponent of the agreement, partition, or exchange agreement or any person claiming under the proponent has the burden to prove by clear and convincing evidence that the party against whom enforcement of the agreement is sought gave informed consent and that the agreement was not procured by fraud, duress, or overreaching.

Whether the proponent, appellant, met the burden of section 5.45, was a question of fact.

Appellant's demands and threats to initiate custody litigation, if appellee did not execute the agreement, may have been lawful. However, under the circumstances of this case, the trial court, as the trier of fact, did not have to believe appellant's testimony and could have reasonably concluded that appellant failed to prove, by clear and convincing evidence, that appellee's consent was not procured by duress or overreaching.

■ Considering the fiduciary relationship, the contents of the indenture, the circumstances surrounding the couple's relationship, and the nature of the demands by appellant, we hold that the trial court did not err in finding the indenture void based on duress, and that its finding was not against the great weight and preponderance of the evidence. Points of error one and seven are overruled.

■ Appellant's eighth point of error contends that the trial court erred in finding that the partition was procured by duress because the trial court did not define duress or, in the alternative, failed to properly define duress. In *Jamison Cold Storage Door Co. v. Brown*, 218 S.W.2d 883, 887 (Tex.Civ.App.—Fort Worth 1949, writ ref'd n.r.e.), the court held that it was not necessary for the trial court to set out in minute legal detail his every reason and theory for having reached the legal conclu-

sion expressed. Appellant's eighth point of error is overruled.

Appellant's ninth point of error complains of the trial court's award of attorney's fees on appeal to appellee, because it is not conditioned on the unsuccessful outcome of the appeal. Appellant's tenth point of error contends that the trial court erred in finding that the appellee will incur reasonable and necessary attorney's fees in the event of appeal, and that considering them as part of the division of property, such are not supported by the record and are improper in the trial court's consideration of the division of property.

The portion of the judgment which appellant complains of is as follows:

To effect an equitable division of the estate of the parties and as part of the division, each party shall be responsible for his or her own attorney's fees incurred as a result of legal representation before the trial court in this case. However, in the event of an appeal by Jordan Royce Matthews, Jr., Carol Kay Matthews is granted judgment against Jordan Royce Matthews, Jr. for $35,000 for attorney's fees for the benefit of Burta Rhoads Raborn and Barbara K. Runge. It is further ordered and decreed that, if Jordan Royce Matthews, Jr. does not appeal this judgment to the Court of Appeals and the time for appeal of that court has expired, then Jordan Royce Matthews, Jr. shall be entitled to a credit of $20,000 against the judgment for attorney's fees. However, if an appeal of the judgment is taken to the Court of Appeals by Jordan Royce Matthews, Jr. it is ordered and decreed that Carol Kay Matthews shall have and recover judgment against Jordan Royce Matthews, Jr. of $20,000 for the benefit of her attorney's, Burta Rhoads Raborn and Barbara K. Runge, such judgment bearing interest at 9.0 percent per annum from the date the appeal to the Court of Appeals is perfected until paid. Execution on said judgment shall issue on the date the appeal is perfected.

It is further ordered and decreed that, if Jordan Royce Matthews, Jr. does not ap-

peal from the Court of Appeals to the Supreme Court of Texas and time for that appeal has expired, Jordan Royce Matthews, Jr. shall be entitled to a credit of $15,000 against the judgment for attorney's fees. However, if an appeal by application of writ of error is taken by Jordan Royce Matthews, Jr. from the judgment of the Court of Appeals to the Supreme Court of Texas is (sic) is ordered and decreed that Carol Kay Matthews shall have and recover judgment against Jordan Royce Matthews, Jr. of $15,000 for the benefit of her attorneys, Burta Rhoads Raborn and Barbara K. Runge, such judgment bearing interest at 9.0 percent per annum from the date the application for writ of error is made to the Supreme Court of Texas until paid. Execution of said judgment shall issue on the date the application for writ of error is made to the Supreme Court of Texas.

The trial court made the following findings of fact relevant to the above portion of its judgment:

(28) In event of appeal, Petitioner will incur reasonable and necessary attorney's fees, which are also considered in the division of property.

(29) The community estate has paid substantial attorney's fees on behalf of Respondent (Jordan Royce Matthews). The community estate has paid only nominal attorney's fees on behalf of petitioner (Carol Kay Matthews).

(30) Respondent expended substantial sums of cash during the pendency of this cause for which he has not accounted.

The trial court reached the following conclusions of law relative to the above:

(2)(d) Money judgment in favor of petitioner for the following appellate fees, subject to credit if no appeal,

1. $20,000 to Court of Appeals
2. $15,000 to Supreme Court

■ In *Murff v. Murff*, 615 S.W.2d 696 (Tex.1981), the court held that a trial judge could award attorney's fees to either party as part of the property division. The court did not distinguish attorney's fees at trial from attorney's fees on appeal. Indeed,

attorney's fees at trial may be awarded to either party as part of the division of the community estate, regardless of who is successful in the trial court. In this respect, divorce cases are substantially different from other actions where a claimant must succeed in order to recover attorney's fees either at trial or on appeal. *See* Tex. Civ.Prac. & Rem.Code sec. 38.001 et seq. (Vernon 1986) (formerly Tex.Rev.Civ.Stat. Ann. art. 2226 (Vernon 1971)); *Siegler v. Williams*, 658 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Ortiz v. O.J. Beck & Sons, Inc.*, 611 S.W.2d 860 (Tex.Civ.App.—Corpus Christi 1980, no writ); *King Optical v. Automatic Data Processing*, 542 S.W.2d 213 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.).

In *Abrams v. Abrams*, 713 S.W.2d 195 (Tex.App.—Corpus Christi 1986, no writ), the court held that, although the appellant won a partial reversal of the judgment, the award of attorney's fees on appeal as a part of the division of the community estate, was not an abuse of discretion.

In *Jacobs v. Jacobs*, 669 S.W.2d 759 (Tex.App.—Houston [14th Dist.] 1984), *rev'd on other grounds*, 687 S.W.3d 731 (Tex.1985), relied on by appellant, the court held that a trial court could not penalize a party for taking a successful appeal by taxing him with attorney's fees. However, it does not appear that the attorney's fees on appeal in *Jacobs* were awarded as part of the division of the community estate. In this respect, *Jacobs* is not controlling in the instant case.

In the instant case, the trial judge expressly found that the attorney's fees on appeal were considered in the just and equitable division of the community estate. Thus, unlike the courts in *Murff, Abrams,* and *Jacobs*, we are not left to speculate as to the basis for attorney's fees on appeal. ■ We hold that a trial judge may properly consider reasonable and necessary attorney's fees on appeal, "as a factor ... in making an equitable division of the estate, considering the conditions and needs of the parties and all of the surrounding circumstances." *Carle v. Carle*, 149 Tex. 469, 472, 234 S.W.2d 1002, 1005 (1950). Be-

cause the findings of fact made by the trial court are supported by the record, we hold that the trial court did not abuse its discretion in unconditionally awarding attorney's fees on appeal to appellee, "considering the conditions and needs of the parties and all of the surrounding circumstances." *Id.* Appellant's ninth and tenth points of error are overruled.

Appellant's eleventh point of error contends that the trial court abused its discretion in the division of the property, because property awarded to appellee was appellant's separate property under the terms of the indenture agreement. This point of error presupposes a finding that the indenture agreement was valid; however, we agree with the trial court that the indenture is invalid. Appellant's eleventh point of error is overruled.

Because of the disposition of appellant's points of error one through seven, it is not necessary to discuss appellee's first cross-point.

Appellee's second cross-point reurges her motion to dismiss the appeal because of appellant's failure to obey trial court orders. *See Baker v. Baker*, 588 S.W.2d 677 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.); *Geesbreght v. Geesbreght*, 570 S.W.2d 427 (Tex.Civ.App.—Fort Worth 1978, writ dism'd); *Alexander v. Gunning*, 572 S.W.2d 34 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Griffin v. Stanley*, 562 S.W.2d 920 (Tex.Civ.App.—Waco 1978, no writ); *O. v. P.*, 560 S.W.2d 122 (Tex.Civ. App.—Fort Worth 1977, no writ); *Strange v. Strange*, 464 S.W.2d 216 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.); *Hays v. Brandon*, 245 S.W.2d 381 (Tex.Civ.App.—Fort Worth 1952, no writ). In all of these cases, the appellee sought to have the appeal dismissed because the trial court had ordered custody of children to the appellee, and appellant had either refused to deliver the children or fled the State with them.

The underlying premise of these cases was that appellant could not challenge in the Court of Appeals the precise order that he was refusing to obey. Here, appellee complains of appellant's failure to obey the following orders: (1) monthly child support

of $1,000; (2) a judgment for past child support of $14,500; and (3) a *post-judgment* order of the trial court ordering appellant to pay appellee's attorneys $20,000.

■ Appellant does not complain on appeal of the award of child support, of the monetary judgment for support arrearages, or of any post-judgment order of the trial court. The appeal is from the judgment. Consequently, the rationale of the above authorities is inapplicable to the instant case.

Appellee's second-cross point is overruled.

Appellee's third and fourth cross-points allege that since appellant has not complied with the briefing rules under Tex.R.Civ.P. 414 and 418, by failing to properly brief each point of error and by not grouping the points of error properly in conjunction with the appropriate argument of authority, appellant has waived his right to appeal.

■ Whether a point of error, combined with the brief of the argument and statements of fact referable to the point, is sufficient to warrant review is a matter within the sound discretion of the court of appeals. Only when the court cannot determine exactly what is urged by a party by applying the most liberal construction of the rules should the court refuse to consider, and therefore overrule, an assigned point of error. *See Texas Farm Products Co. v. Stock,* 657 S.W.2d 494 (Tex.App.— Tyler 1983, writ ref'd n.r.e.). Appellant's points of error sufficiently direct the attention of the court to the matters complained of and the legal and factual foundation on which they are based.

Appellee's third cross-point is overruled.

The judgment is affirmed.