**James E. SADLER, Appellant,**

v.

**Laura Lynn SADLER, Appellee.**

**No. A14–87–00724–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 1, 1988.

Rehearing Denied Feb. 23, 1989.

Herbert N. Lacksin, Houston, for appellant.

John Payne, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

OPINION

J. CURTISS BROWN, Chief Justice.

In this divorce case the trial judge appointed a master to receive evidence. After taking nearly two weeks of testimony, the master filed findings of fact and conclusions of law, which the judge adopted with only slight modifications. Appellant now complains he was wrongly deprived of a jury trial; he also contests various aspects of the property division. In her cross-point appellee requests imposition of

a lien on appellant's separate property residence.

The marriage, which produced no children, was not the first for either party. It lasted three years before appellee filed for divorce. She brought one minor child and little property with her from Dallas to Houston, where appellant had two minor children of his own and a substantial personal estate. The parties executed a marital property agreement, but the master refused to enforce it after hearing the evidence. Much of the hearing focused on the characterization and tracing of the various assets. At its close the attorneys made an agreement—the effect of which is in dispute—to put the case into the appellate process without trial de novo, in the event of dissatisfaction with the master's rulings.

To appellant's extreme dissatisfaction, the master refused to enforce the marital property contract. The master then characterized the respective assets, ruled on claims for reimbursement, awarded appellee more than half the community estate, and assessed the bulk of the costs against appellant.

■ Points of error one and two complain of the denial of a jury trial. Appellant cites cases decided under TEX.R.CIV.P. 171 as authority for his right to contest a master's report via jury determination. *See* 3 R. McDONALD, TEXAS CIVIL PRACTICE § 10.17.3 (rev. 1983). By entering the agreement in open court, however, appellant gave up this right. Although his counsel did not use the words "waiver of jury trial," no other interpretation would give meaning to the stipulation. TEX.R.CIV.P. 11 makes this agreement enforceable. It is not sufficient for appellant to contend that his subjective understanding of the agreement differed from its objective meaning. Points of error one and two are overruled.

In point of error twenty six appellant complains of the trial court's failure to enforce the marital property agreement. The parties were married on July 31, 1982 and signed the contract on Oct. 28, 1982. As the law stood at that time, such an agreement was authorized by statute:

§ 5.43. Agreements Between Spouses Concerning Income or Property Derived From Separate Property

At any time, the spouses may agree that the income or property arising from the separate property then owned by one of them, or which may thereafter be acquired, shall be the separate property of the owner.

\* \* \* \* \* \*

§ 5.45. Marital Agreements: Burden of Proof

In any proceeding in which the validity of a provision of an agreement, partition, or exchange agreement made under this subchapter is in issue as against a spouse or a person claiming from a spouse, the burden of showing the validity of the provision is on the party who asserts it. The proponent of the agreement, partition, or exponent has the burden to prove by clear and convincing evidence that the party against whom enforcement of the agreement is sought gave informed consent and that the agreement was not procured by fraud, duress, or overreaching.

TEX.FAM.CODE §§ 5.43, 5.45 (Vernon 1982).

■ A model of simplicity, the written instrument has only eight paragraphs and is but three pages long. After reciting the names and marital status of the parties, it provides that the income from either spouse's separate property is to be that spouse's separate property. At the end of the document is a reiteration of the intent of the parties:

8. *Miscellaneous.* EACH PARTY TO THIS AGREEMENT UNDERSTANDS THAT BY SIGNING THIS AGREEMENT HE OR SHE MAY BE PERMANENTLY SURRENDERING CLAIMS HE OR SHE WOULD OTHERWISE HAVE UNDER TEXAS LAW TO INCOME OR PROPERTY DERIVED FROM SEPARATE PROPERTY OF HIS OR HER SPOUSE.

Immediately thereafter appear the respective signatures of the spouses, followed by two notarial affirmations of due execution.

At the hearing appellant called to the stand the attorney who drafted this con-

tract. She testified at length to the circumstances of execution, stating that the parties freely entered into the agreement. She had dismissed appellant from the room and repeatedly counseled appellee to engage her own attorney. Appellee declined this invitation and duly signed the contract, refusing to take it home and think about it.

For her part, appellee took the position that the agreement was not worth the paper it was written on. She testified that the lawyer had not told her she could be giving up valuable community rights, that appellant had never (to her recollection) left the room, and that the name of the notary public was unfamiliar.

In *Williams v. Williams*, 720 S.W.2d 246 (Tex.App.—Houston [14th Dist.] 1986, no writ) we upheld a similar agreement which was signed late on the day before the wedding. The spouses both had children from prior marriages, and we could not discern a basis for voiding the contract. The case at bar presents analogous considerations. Appellee had been married and divorced twice before. Both parties are mature, competent adults with full capacity to enter such agreements. The document in issue is short, clear, and utterly devoid of unfair terms. Nowhere does it impose unbalanced or asymmetric conditions. Nor does it purport to repress outright the possibility of any community property from coming into existence. This case occupies the opposite end of the spectrum from those such as *Matthews v. Matthews*, 725 S.W.2d 275 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (involving threats and extreme marital stress).

For the same reasons that we have enforced the waiver of jury trial against appellant, we feel that appellee cannot escape her agreement by mere denial of understanding it. A conclusory averment of ignorance will not do. Our holding has much to commend it as a policy matter, but there are also supporting considerations based on statutory construction.

When the legislature enacted the laws in question, a leading commentator concluded that the safest way to discharge the burden of proof was to "demand from the outset that all parties to any such arrangement be represented by independent counsel." McKnight, *Texas Family Code Symposium—Title 1. Husband and Wife*, 13 Tex.Tech.L.Rev. 611, 784 (1982). He later reflected on the "very heavy burden" and noted that it had made a successful appeal virtually impossible. McKnight, *Family Law: Husband and Wife, Annual Survey of Texas Law*, 42 Sw.L.J. 1, 16 (1988). For this reason the legislature repealed the statute and replaced it with another. *See id.* Neither enactment, however, created a per se requirement of independent counsel, despite such intimations from the academy. *E.g.* Cameron, Hoffman, and Ytterberg, *Marital and Premarital Agreements*, 39 Baylor L.Rev. 1095, 1111, 1124 (1987). The legislature never intended to make impossible the types of arrangement which the electorate had just authorized by amendment to Tex.Const. art. XVI, § 15.

■ If an accused in a criminal proceeding may waive his constitutional rights to remain silent and to have counsel, we cannot see why a spouse may not likewise speak for herself without a lawyer. If a *Miranda* card signed by an accused may support a criminal confession, there is no reason to disparage the efficacy of a signed and notarized marital partition agreement. Construing the repealed statute, we hold that the introduction of a fair agreement, fairly executed, creates a presumption of enforceability. *See* Annot., *Premarital Agreements—Execution*, 53 A.L.R.4th 85 § 12 (1987). Any contrary conclusion would be "an invitation to the very wealth redistribution that these agreements are designed to prevent." *Gant v. Gant*, 329 S.E.2d 106, 114 (W.Va.1985). We sustain point of error twenty-six and remand this cause to the trial court for proceedings consistent with this opinion. Upon remand the court should revisit its distribution of community assets, according to what is a just and right division. Tex.Fam.Code § 3.63. Because enforcement of the agreement will alter the characterization of various assets, it is unnecessary for us to ad-

dress any other complaints.[1]

The judgment is reversed and the cause remanded for trial.

---

**1.** This appeal does not require us to decide whether the 1987 amendments to the Family Code will govern the proceedings on remand. *See* Tex.Fam.Code § 5.55 (Vernon Supp.1988) (moving the burden of proof to the party against whom enforcement is sought).