Opinion issued July 13, 2006 



















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00892-CV
____________
 
LYNDA PEARL BOAZ, Appellant
 
V.
 
GENE DAVIS BOAZ and RALPH BOAZ, Appellees
 

 
 
On Appeal from the 300th Judicial District Court
Brazoria County, Texas
Trial Court Cause No. 2000-60319
 

 
 
O P I N I O N
Appellant, Lynda Pearl Boaz, challenges the trial court’s rendition of summary
judgment in favor of appellee, Gene Boaz, in her bill of review proceeding to set
aside a final divorce decree.


 In four points of error, Lynda contends that the trial
court erred in granting Gene’s no-evidence summary judgment motion and in
dismissing appellee, Ralph Boaz, as a party. We affirm.
Factual and Procedural Background
          Lynda Pearl Boaz and Gene Boaz married in 1984. Before their marriage,
Gene owned a majority of the stock in Civil Mechanical Incorporated (“CMI”), an
industrial construction company that he had founded in March 1981. Between 1983
and 1984, Gene started another venture, a general partnership with his brother, Ralph
Boaz, called Brothers Equipment (“Brothers”). Brothers owned construction
machinery, which it leased, mostly to CMI, on a monthly rental basis. Brothers also
owned real property, including a 600-acre ranch. In 1998 or 1999, Gene and Ralph
decided to wind down the Brothers partnership, and Brothers sold all of its equipment
to CMI. In exchange for the equipment, CMI gave Brothers a ten-year note worth
approximately $400,000. When Gene and Ralph dissolved Brothers, they agreed that
ownership of the ranch would be transferred to Ralph and that Gene would receive
the $400,000 note.



          Gene then entered into negotiations with Wolfenson Electric, Inc.
(“Wolfenson”) for the sale of his ownership interest in CMI stock. In an August 11,
1999 “Letter of Intent to Purchase,” Wolfenson agreed to purchase the 70% of CMI
stock representing Gene’s interest for $2.5 million. On June 27, 2000, Gene and
Wolfenson signed a contract for the sale of Gene’s CMI stock for the agreed $2.5
million purchase price. 
          Meanwhile, Lynda had sued Gene for divorce, seeking a division of the
community estate acquired during the marriage. On August 19, 1999, in connection
with the impending divorce proceeding, both parties filed inventories with the trial
court. In his inventory, Gene purported to delineate his real and personal property
“before marriage” and his real and personal “community property.” Gene also
declared all CMI stock as his separate “personal property before marriage” and,
despite the August 11, 1999 letter of intent entered into with Wolfenson, listed the
value of his CMI stock as “unknown.” With respect to Brothers, Gene claimed half
of the partnership as his separate “real property before marriage” and listed its value
at $200,000. He also recognized a “community interest in Brothers” (presumably the
one-half partnership interest acquired from Ralph in exchange for the ranch) and
listed it as “community personal property” valued at $200,000. 
          On November 19, 1999, the trial court entered an agreed upon final decree of
divorce that divided the property from the marital estate. Among the various
provisions, the decree awarded Gene ownership of “all stocks, bonds, and securities”
in connection with CMI. It also awarded Gene “the business known as Brothers
Equipment,” including all “rights and privileges, past, present, or future, arising out
of or in connection with the operation of such business.” The trial court awarded
Lynda certain other property. 
          On October 1, 2001, Lynda initiated the instant bill of review proceeding,
seeking to set aside and rescind the divorce decree. In her petition, Lynda alleged
that the decree was based on fraud and a breach of Gene’s fiduciary duties owed to
Lynda and the community estate. Specifically, Lynda asserted that Gene had perjured
himself in his inventory because he had claimed that the value of his CMI stock was
“unknown” despite the fact that he had already agreed to sell it for $2.5 million. 
Lynda also named Ralph as a party and asserted that Gene and Ralph had entered into
certain transactions in order to hide community assets and “intentionally conceal[] the
true nature of assets divided in the divorce.” Lynda alleged that Gene had committed
“fraud on the community” and that she was given no consideration or accord for the
community time, talent, labor, and money that went into the enhancement of Gene’s
separate property during the marriage. 
          Gene then filed his no-evidence summary judgment motion, asserting that
Lynda “[could] not provide any evidence to support the element of fraud, accident or
wrongful act of the opposite party.” Ralph moved for dismissal with prejudice of
Lynda’s claim against him. After a hearing, the trial court granted Ralph’s motion to
dismiss and, subsequently, without specifying the grounds upon which it relied,
entered an order granting Gene’s no-evidence summary judgment motion.Standard of Review
          To prevail on a no-evidence summary judgment motion, a movant must allege
that there is no evidence of an essential element of the adverse party’s cause of action
or affirmative defense. Tex. R. Civ. P. 166a(i); Fort Worth Osteopathic Hosp. v.
Reese, 148 S.W.3d 94, 99 (Tex. 2004); Flameout Design & Fabrication, Inc. v.
Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999,
no pet.). We review a no-evidence summary judgment under the same legal
sufficiency standard used to review a directed verdict. Gen. Mills Rests., Inc. v. Tex.
Wings, Inc., 12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.). Although
the non-moving party is not required to marshal its proof, it must present evidence
that raises a genuine issue of material fact on each of the challenged elements. Tex.
R. Civ. P. 166a(i); Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 
A no-evidence summary judgment motion may not properly be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of
material fact on the challenged elements. Ridgway, 135 S.W.3d at 600. More than
a scintilla of evidence exists when the evidence “rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.” Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). When reviewing a no-evidence summary judgment motion, we assume that all evidence favorable to the
non-movant is true and indulge every reasonable inference and resolve all doubts in
favor of the non-movant. Spradlin v. State, 100 S.W.3d 372, 377 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). 
Bill of Review
          In her first point of error, Lynda argues that the trial court erred in granting
summary judgment in favor of Gene because she “proved, as a matter of law, or at
least raised a genuine issue of material fact,”(1) that she has “a meritorious defense”
in the underlying divorce action, (2) that she was prevented from making because of
the fraud of Gene, (3) and which was unmixed with any fault or negligence of her
own. Gene responds by arguing that because Lynda “proffered no evidence of
extrinsic fraud,” the trial court did not err in granting his no-evidence summary
judgment motion.
          Upon the expiration of the trial court’s plenary power, a judgment cannot be
set aside by the trial court except by bill of review for sufficient cause, filed within
the time allowed by law. Tex. R. Civ. P. 329b(f). A bill of review is an equitable
action brought by a party to a prior action who seeks to set aside a judgment that is
no longer subject to challenge by a motion for new trial or appeal. Caldwell v.
Barnes, 154 S.W.3d 93, 96 (Tex. 2004). To be entitled to a bill of review, a petitioner
must ordinarily allege and prove: (1) that she has a meritorious defense to the
underlying cause of action, (2) that she was prevented from making by fraud,
accident, or wrongful act of the opposite party or official mistake, (3) and which was
unmixed with any fault or negligence of her own. Id.; Hernandez v. Koch Mach. Co.,
16 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). 
          Bills of review seeking relief from otherwise final judgments are scrutinized
by courts of equity with extreme jealousy, and grounds on which interference will be
allowed are narrow and restricted. Montgomery v. Kennedy, 669 S.W.2d 309, 312
(Tex. 1984). The grounds upon which a bill of review can be obtained are narrow
because the procedure conflicts with the fundamental policy that judgments must
become final at some point. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751
(Tex. 2003). Although a bill of review is an equitable proceeding, the fact that an
injustice may have occurred is not sufficient to justify relief by bill of review. 
Wembley Inv. Co. v. Herrera, 11 S.W.3d 924, 927 (Tex. 1999); Jones v. Corcoran,
95 S.W.3d 673, 675 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
          In the context of bill of review proceedings, fraud is classified as either
“extrinsic” or “intrinsic.” King Ranch, 118 S.W.3d at 752. Only extrinsic fraud will
entitle one to relief through a bill of review. Id. Intrinsic fraud will not support a bill
of review because each party must guard against adverse findings on issues directly
presented. Id.
          Extrinsic fraud is fraud which denies a party the opportunity to fully litigate at
trial all the rights or defenses that could have been asserted. Id. It is wrongful
conduct practiced outside of the adversary trial—such as keeping a party away from
court, making false promises of compromise, denying a party knowledge of the
suit—that affects the manner in which the judgment is procured. Ince v. Ince, 58
S.W.3d 187, 190 (Tex. App.—Waco 2001, no pet.). Extrinsic fraud is collateral fraud
in the sense that it must be “collateral” to the matter actually tried and not something
that was actually or potentially in issue at the trial. Montgomery, 669 S.W.2d at 312.
          Intrinsic fraud, by contrast, relates to the merits of the “issues which were
presented and resolved—or could have been resolved—in the former action.” Ince,
58 S.W.3d at 190. Within that term are included such matters as fraudulent
instruments, perjured testimony, or any matter which was actually presented to and
considered by the trial court in rendering the judgment assailed. Alexander v.
Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 1001 (1950). Intrinsic fraud is “inherent
in the matter considered and determined in the trial‘where the fraudulent acts pertain
to an issue involved in the original action, or where the acts constituting the fraud
were, or could have been litigated therein.’” Montgomery, 669 S.W.2d at 313. 
“Issues underlying the judgment attacked by a bill of review are intrinsic and thus
have no probative value on the fraud necessary to a bill of review.” King Ranch, 118
S.W.3d at 752. 
Inventory
          Lynda argues that because “Gene perjured himself on the Inventory and
Appraisement,” and because he had “a fiduciary relationship . . . as to the community
property,” Gene’s concealment of community assets constituted extrinsic fraud. In
addition to the alleged misrepresentation regarding the value of CMI, Lynda asserts
that Gene did not disclose in his inventory: (1) the $400,000 note that CMI gave to
Brothers in exchange for Brothers’s equipment, (2) the more than 600-acre ranch that
had belonged to Brothers prior to the dissolution of the partnership, and (3) the 2.5
acres of land with a shop building on it in Clute, Texas that Brothers had purchased
from CMI during Lynda and Gene’s marriage. Lynda argues that she was defrauded
because she would have not entered into the divorce agreement had Gene disclosed
these facts.
           Gene did claim CMI as his separate property, but the record reveals that the
value of CMI was a contested issue during the divorce proceedings. Lynda explained
that her attorney hired a business evaluator to appraise CMI for the purpose of the
divorce action and that Lynda gave all the relevant documents to her attorney,
including CMI financial statements. Although Lynda contends that Gene refused to
authorize the release of his financial records with respect to this bill of review
proceeding, Lynda has presented no evidence that he refused any similar requests
during the divorce proceedings. Lynda had the opportunity to, and apparently did
investigate the value of CMI in connection with the divorce settlement. Thus, even
if Gene intentionally perjured himself on his inventory regarding the known value of
CMI, that perjury would not constitute extrinsic fraud. See Montgomery, 669 S.W.2d
at 313 (“It is particularly well-established that the alleged perjury of a witness on a
contested issue, which the opposing party had the opportunity to refute, is intrinsic
fraud.”). Accordingly, Lynda did not present more than a scintilla of evidence to
establish extrinsic fraud based on either Gene’s failure to disclose his negotiations
with Wolfenson or any misrepresentations he made regarding CMI’s value. See
Kennell v. Kennell, 743 S.W.2d 299, 301 (Tex. App.—Houston [14th Dist.] 1987, no
writ) (holding divorced wife’s summary judgment evidence on bill of review as to
several misrepresentations made by former husband did not show extrinsic fraud
because information regarding true value of company was available during original
divorce proceeding through normal discovery procedures); Bankston v. Bankston, 251
S.W.2d 768, 773 (Tex. Civ. App.—Dallas 1952, no writ) (affirming summary
judgment for bill-of-review defendant where husband allegedly misrepresented values
of assets, but wife’s attorney had independently investigated values). 
          Lynda’s claim also fails with respect to assets that she contends were excluded
from the inventory. Even if Gene was required to list these assets in his inventory as
Lynda contends, “perjured testimony or testimony withheld, which would have a
bearing on an issue in the trial, is not a sufficient basis for setting aside a final
judgment on bill of review.” Hamborsky v. Hamborsky, 584 S.W.2d 330, 332 (Tex.
Civ. App.—San Antonio 1979, no writ); see also King Ranch, 118 S.W.3d at 752. 
(“Issues underlying the judgment attacked by a bill of review are intrinsic and thus
have no probative value on the fraud necessary to a bill of review.”). 
          The cases cited to by Lynda in support of her bill of review are inapposite. It
is true that a “meritorious defense” may be shown where a husband conceals assets,
misrepresents a company’s financial condition, or does not disclose funds on an
inventory. However, as noted above, to support a bill of review, a plaintiff must also
show extrinsic fraud—“fraud [that] prevented the party from knowing about and
presenting his legal rights at trial.” Montgomery, 669 S.W.2d at 314; see also
Rathmell v. Morrison, 732 S.W.2d 6, 13–14 (Tex. App.—Houston [14th Dist.] 1987,
no writ).
          In her briefing, Lynda cites Montgomery for the proposition that “concealment
of a material fact by a fiduciary charged with the duty of full disclosure is extrinsic
fraud.” 669 S.W.2d at 313. In Montgomery, the supreme court held that a trustee had
committed extrinsic fraud when he concealed trust assets in order to prevent their
inclusion in an agreed judgment involving the beneficiary. Id. at 313–14. 
Montgomery too, however, is inapposite to the case at bar. In Montgomery, the
trustee had a fiduciary duty to the beneficiary. Id. at 313. We note that husbands and
wives generally owe a fiduciary duty to one another. Vickery v. Vickery, 999 S.W.2d
342, 357 (Tex. 1999); Matthews v. Matthews, 725 S.W.2d 275, 279 (Tex.
App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.). However, adverse parties who
have retained professional counsel, including husbands and wives in a suit for
divorce, do not owe fiduciary duties to one another. Boyd v. Boyd, 67 S.W.3d 398,
405 (Tex. App.—Fort Worth 2002, no pet.). In addition, Montgomery made clear that
“when the allegedly fraudulent act constitutes an issue in the action in which the
judgment was rendered, the fraud is intrinsic.” 669 S.W.2d at 314 (citing Kelly v.
Wright, 144 Tex. 114, 119, 188 S.W.2d 983, 985–86 (1945)). Here, Gene owed no
fiduciary duty to Lynda during the pendency of the divorce proceedings, and Lynda
has not presented more than a scintilla of evidence to support a finding of extrinsic
fraud in connection with the inventory. 
Fraud on the Community
          Lynda also argues that Gene committed extrinsic fraud on her community
interest because he “intentionally concealed the true nature of assets divided in the
divorce, and intentionally misclassified these assets as his own separate property.” 
          Fraud on the community in the wrongful disposition of community assets is
“[t]he breach of a legal or equitable duty which violates the fiduciary relationship
existing between spouses.” In re Marriage of Moore, 890 S.W.2d 821, 827 (Tex.
App.—Amarillo 1994, no writ). Such fraud can be considered by the trial court in the
division of community property. See Schlueter v. Schlueter, 975 S.W.2d 584, 589–90
(Tex. 1998).
          We note that despite Lynda’s claim of “fraud on the community,” her own
deposition testimony reveals that she and her attorney knew, at the time of the
divorce, that Gene had previously used community funds to “pay[] CMI debts” and
“keep [CMI] going during [the] marriage.”


 Gene indicated to Lynda, by way of his
inventory, that he considered CMI and one-half of Brothers to be his separate
property. The other one-half of Brothers, along with a note receivable from CMI,
were among the items listed as “personal community property.” In this way, the
“character” of both CMI and Brothers was directly at issue during the divorce
proceedings. Lynda, aided by her attorney and appraiser, and with knowledge and
evidence of Gene’s use of community funds, could have explored any “fraud on the
community” or reimbursement claims involving CMI or Brothers in the underlying
divorce action. Lynda has brought forward no evidence of extrinsic fraud showing
that Gene prevented Lynda from presenting her case at the time of the divorce
proceedings. Instead, it is in her bill of review that Lynda seeks to re-litigate the
division of the marital estate and the character of certain property within the marital
estate. 
          One purpose of divorce proceedings is to resolve the differences in the parties’
perceptions or assertions of fact. Kennell, 743 S.W.2d at 301. It might well be that
the trial court would have divided the community property in a different manner had
it heard evidence of Gene’s alleged transfers of community funds during the marriage
for the benefit of CMI and Brothers. However, the purpose of a bill of review is not
to reopen litigation every time a party, upon further reflection, decides that she is
dissatisfied with the result in a case. Id.In sum, Lynda did not present any summary judgment evidence demonstrating
that Gene’s alleged perjury in regard to the inventory and his alleged fraud on the
community prevented her from asserting her rights and defenses during the divorce
proceeding. See Montgomery, 669 S.W.2d at 312. Thus, she presented no genuine
issue of material fact as to extrinsic fraud. Accordingly, we hold that the trial court
did not err in granting Gene’s no-evidence summary judgment motion. 
          We overrule Lynda’s first point of error. 
 
 
 
 
 
 
 
 
Conclusion
          Having held that the trial court did not err in granting Gene’s no-evidence
summary judgment motion against Lynda in her bill of review proceeding, we need
not reach Lynda’s second, third, and fourth points of error in which she contends that
the trial court erred in dismissing Ralph as a party in the proceeding.
          We affirm the judgment of the trial court.
 
 
 
     Terry Jennings
     Justice

Panel consists of Justices Nuchia, Jennings, and Higley