# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00574-CV

**Charlene Coppedge-Link, As Next Friend of Justin Ray Coppedge and
Jacob Ryan Coppedge, Appellant**

**v.**

**State Farm Life Insurance Company, State Farm Mutual Automobile Insurance Company,
State Farm Fire and Casualty Company, State Farm County Mutual Insurance
Company of Texas, and State Farm Lloyds, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. GN200735, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In January 1998, appellant Charlene Coppedge-Link, acting individually and on behalf of her two sons Justin Ray Coppedge and Jacob Ryan Coppedge, entered into an agreement with appellee State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and others, settling all personal injury and insurance claims that arose out of a fatal automobile accident. The settlement agreement included structured settlement payments for Coppedge-Link's children. State Farm Mutual, in turn, purchased annuities from its affiliate, appellee State Farm Life Insurance Company ("State Farm Life"), to fund the structured settlement agreement. Four years later,

Coppedge-Link filed the present suit, alleging that appellees[1] engaged in monopolistic and anti-competitive conduct by forcing her to accept structured settlements from State Farm Life, denying her the freedom to invest her proceeds in a structured settlement of her choice, and failing to disclose certain fees and expenses. Appellees filed traditional and no-evidence motions for summary judgment, relying in part on the affirmative defenses of release, res judicata, and quasi-estoppel; the trial court granted appellees' traditional summary-judgment motions. Coppedge-Link appeals the trial court's judgment by three issues. We overrule those issues and affirm the trial court's summary judgment.

**BACKGROUND**

On March 7, 1997, Coppedge-Link's husband was killed in a two-vehicle accident; he was a passenger in one of the vehicles. Mr. Coppedge was insured by State Farm Mutual. The driver at fault, who was driving the other vehicle, was also insured by State Farm Mutual. The driver of the vehicle carrying Mr. Coppedge was insured by Southern Farm Bureau Casualty Company. Coppedge-Link, individually and on behalf of her two minor children, asserted claims against the two drivers involved in the accident and both insurance companies.[2] The drivers and insurance companies were all represented by attorney Tom Newton.

---

[1] Appellees consist of State Farm Life Insurance Company, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, State Farm County Mutual Insurance Company of Texas, and State Farm Lloyds. For convenience, we will refer to them collectively as "appellees" or "State Farm defendants" unless our discussion requires us to distinguish among them.

[2] Mr. Coppedge's parents were also claimants, but their involvement is not relevant to the appeal before us.

Coppedge-Link and the insurance companies agreed to settle the claims for the combined policy limits of $70,000. She elected to allocate $30,000 of the settlement proceeds to her two minor children, $15,000 for each one, and consulted with a financial advisor to discuss investment options for the settlement proceeds. The financial advisor informed Coppedge-Link about structured settlement options, an alternative to lump-sum payments.

One of the benefits of a structured settlement is that both the principal and the interest on structured settlements are tax exempt. 26 U.S.C.A. § 104(a)(2) (West 2002) (gross income does not include damages received on account of personal injuries whether as lump sums or as periodic payments). This tax exempt status is lost, however, if the claimant (1) receives a lump sum settlement and uses the proceeds to purchase a structured settlement, or (2) "constructively receives" funds that are used to purchase a structured settlement annuity. Constructive receipt occurs when

> [i]ncome although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.

26 C.F.R. § 1.451-2(a) (2003).

To take advantage of this tax-exempt status, Coppedge-Link, through her attorney, requested structured settlements for her two children. In response, State Farm Mutual offered a structured settlement proposal to pay specified future periodic payments to the children. Pursuant to State Farm Mutual's policy, the payments would be funded by annuities that State Farm Mutual would purchase from its affiliate, State Farm Life. The parties eventually reached an agreement,

3

under which State Farm Mutual agreed: (1) to immediately pay $40,000 to Coppedge-Link; and (2) to make twenty-two monthly payments of $996.58 to one son, starting June 1, 2004, and twenty-three monthly payments of $1,007.39 to the other son, starting June 1, 2005. In addition, State Farm Mutual had the right to purchase an annuity from State Farm Life to satisfy its obligation to make the future payments. In exchange, in January 1998, Coppedge-Link signed a release agreement both for herself and on behalf of her children, and following a hearing, a district court approved the settlement and signed the judgment.

On March 5, 2002, Coppedge-Link filed the present lawsuit, alleging that State Farm Mutual coerced her into accepting a structured settlement for her children that was funded by State Farm Life annuities at lower rates of return than available from other life insurance companies, conspired with other State Farm companies to prohibit competition from other life insurance companies, paid less than the agreed $15,000 per son for the annuities,[3] concealed the cost of the annuities, charged excessive fees and commissions for the purchase of the annuities, paid illegal rebates or kickbacks among the State Farm defendants or to brokers, and failed to fully disclose the terms and conditions of the annuities. She asserted the following causes of action: violation of the deceptive trade practices—consumer protection act;[4] violation of article 21.21, section 4 of the

---

[3] State Farm Life charged a $100 policy expense fee for each structured settlement. Coppedge-Link thus claims that the annuities were not in the amount of $15,000, as the parties agreed to, but were actually in the amount of $14,900, after the fee was paid.

[4] *See* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp. 2004).

insurance code;[5] violations of the Texas Free Enterprise and Antitrust Act;[6] civil conspiracy; unjust

enrichment; and conversion.  She also claimed that the release agreement was procured by coercion

and economic duress.  The State Farm defendants filed a motion for summary judgment based on

the affirmative defenses of release, res judicata, and estoppel by acceptance of benefits.  The

defendants also filed four no-evidence summary judgment motions and two motions for partial

summary judgment.  The trial court granted the traditional motion for summary judgment that was

based on the affirmative defenses as well as two partial summary-judgment motions, but did not rule

on the no-evidence summary-judgment motions.  Coppedge-Link appeals the two partial summary

judgments and the one dispositive traditional summary judgment.

## DISCUSSION

### *Standard of Review*

Summary judgment is properly granted only when the movant establishes that there

are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  Tex. R.

Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Missouri Pac. R.R.

v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism'd).  Because the

propriety of a summary judgment is a question of law, we review the trial court's decision de novo.

*Natividad v. Alexsis, Inc*., 875 S.W.2d 695, 699 (Tex. 1994).  The standards for review of a

traditional summary judgment are well established:  (1) the movant must show that there is no

genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding

---

[5] *See* Tex. Ins. Code Ann. art. 21.21, § 4 (West Supp. 2004).

[6] *See* Tex. Bus. & Com. Code Ann. §§ 15.01-.52 (West 2002).

5

whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. Tex. R. Civ. P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

A defendant seeking summary judgment must as a matter of law negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *Missouri Pac.*, 86 S.W.3d at 790. Not until the defendant establishes its right to summary judgment does the plaintiff bear the burden of raising a fact issue. *Id*. If a trial court's order granting summary judgment does not specify the basis for the court's ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

*Release*

By her first issue, Coppedge-Link contends that the trial court erroneously granted summary judgment based on the State Farm defendants' affirmative defenses of release, res judicata, and quasi-estoppel by acceptance of benefits. We will first address the affirmative defense of release.

A release is an agreement or contract in which one party agrees that a duty or obligation owed by the other party is discharged immediately on the occurrence of a condition. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *National Union Fire Ins. Co. v. Insurance Co. of N. Am.*, 955

6

S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex. 2000). A release extinguishes a claim or cause of action and bars recovery on the released matter. *Dresser Indus.*, 853 S.W.2d at 508.

To release a claim effectively, the releasing instrument must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Any claims not "clearly within the subject matter" of the release are not discharged, even if those claims exist when the release is executed. *Id.* It is not necessary, however, for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000). Although releases generally contemplate claims existing at the time of execution, a valid release may also encompass unknown claims and damages that develop in the future. *Id.*

Like any other agreement, a release is subject to the rules of construction governing contracts, *Williams*, 789 S.W.2d at 264, including the tenet that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained, *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). When construing a contract, courts must give effect to the true intentions of the parties as expressed in the written instrument. *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). The contract must be read as a whole rather than by isolating a certain phrase, sentence, or section of the agreement. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

7

The release agreement that was signed in this case provides that Coppedge-Link on her behalf and on behalf of her children, in consideration of the purchase of an annuity contract, releases and discharges State Farm Mutual and Southern Farm Bureau Casualty Insurance Company, their successors and assigns, and all persons, firms, or corporations associated or connected with them from

> any and all claims, demands, actions, damages, exemplary damages, injuries, or other damages of every name, kind and nature whatever, whether such damage or injury be to person or property, whether known or unknown, against Releasees, or any of them, and including, but not limited to, those claims and causes of action for Wrongful Death, Survival, actual, statutory, Insurance Code violations, exemplary damages or any other type of damages based on contract, tort, bad faith, fraud, misrepresentation, Wrongful Death, Survival, statutory causes of action, Insurance Code violations or any other cause of action which Releasors have or may have against Releasees, or any of them, arising out of the sale of, coverage under, investigations or handling of claims of uninsured/underinsured motorist policies of insurance issued to JAMES ROLAND COPPEDGE, JR., DECEASED, and RANDY G. WALKER, and/or arising out of an accident with an uninsured/underinsured motorist and motor vehicle on or about the 7th day of March, 1997, in Uvalde, Uvalde County, Texas.

Coppedge-Link construes the release as limited in scope to claims arising out of the automobile accident. She focuses on the language: "arising out of the sale of, coverage under, investigation or handling of *claims of uninsured/underinsured motorist policies of insurance*" and "arising out of *an accident* with an insured/underinsured motorist and motor vehicle accident." (Emphasis added.) She argues that the subject matter of the present suit involves State Farm's conduct *after* she and State Farm reached a settlement agreement—"State Farm's unlawful restraint of trade and illegal monopolistic conduct in enforcing the State Farm [Life] Only policy" when purchasing the annuities to fund the structured settlement agreement. Moreover, argues Coppedge-

8

Link, the only party in the present suit that was also a party to the prior suit, which resulted in the release, is State Farm Mutual.[7]

We disagree with Coppedge-Link's characterization of the release and of her claims in the present suit. The language in the release is broad, encompassing "any and all claims" or other damages "of every name, kind and nature whatever," "whether known or unknown," including "any other cause of action which Releasors have or may have against Releasees . . . arising out of the sale of, coverage under, investigation or handling of claims" "and/or arising out of [the] accident." The release is not limited to a specific type of claim resulting from the car accident itself, nor is it limited to claims existing at the time it was executed. Instead, it covers all claims of any kind, whether known or unknown. Courts have construed releases with similar language broadly. Only when the release clearly evidences an intent to be limited in scope have courts interpreted it narrowly.[8]

---

[7] The release states that Coppedge-Link releases and discharges State Farm Mutual as well as "any and all persons, firms or corporations associated or connected with them." Coppedge-Link does not argue on appeal that the other State Farm defendants are not covered by the release. Thus, if the release covers the claims included in Coppedge-Link's lawsuit, it operates to bar those claims against all the State Farm defendants, even though State Farm Mutual is the only defendant that is specifically named in the release.

[8] *Cf., e.g.*, *Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000) (holding broad release of claims attributable to professional services extended to malpractice claims even though recitals primarily addressed unpaid fees); *Memorial Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434-35 (Tex. 1997) (holding that release, which stated that parties agreed to release all claims related to corrective action by Memorial against Keszler "and any other matter relating to [Keszler's] relationship with [Memorial]" was not limited to claims regarding corrective action, but released all claims relating to Keszler's relationship with Memorial, including ethylene dioxide exposure claim); *Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382, 385-87 (Tex. App.—Beaumont 2004, pet. filed) (holding that release defining released claims as "any and all claims or causes of action of any nature whatsoever" included all claims by class attacking Blockbuster's extended viewing fee policies and was not limited to claims arising during specific time period, even though release defined class as those who paid fees between January 1, 1992 and April 1, 2001); *Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 18 (Tex. App.—San Antonio

Although Coppedge-Link attempts to characterize her present claims as claims based on the conduct of appellees *after* they reached a settlement, it is clear that the crux of her case involves her dissatisfaction with the terms of the settlement agreement. Her principal complaints are that she would have preferred for State Farm Mutual to have purchased the structured settlement annuities from someone other than State Farm Life and that her children will be receiving less than she thought she had bargained for. The right to purchase the annuities from State Farm Life, however, is specifically spelled out in the settlement agreement: "Defendants have the right to purchase an annuity policy from State Farm Life Insurance Company, as herein provided below, in order to satisfy its obligations with respect to the aforementioned [structured settlement] payments." In addition, the terms of the structured settlement payments were spelled out in the proposals, and Coppedge-Link agreed to those terms. The settlement agreement arises directly out of the accident in which her husband was involved.

---

1998, no pet.) (holding that release, which operated to "release[] North Star Dodge from any and all liability regarding the purchase of a 1993 Mazda," was not limited to claims concerning purchase of vehicle, but also included unlawful debt collection, conversion, and wrongful repossession claims because terms of purchase were not satisfied); *Anheuser-Busch Cos. v. Summit Coffee Co.*, 858 S.W.2d 928, 932-34 (Tex. App.—Dallas 1993, writ denied), *vacated on other grounds*, 514 U.S. 1001 (1995) (holding that release, which released "any and all causes of action of any nature whatsoever, at common law, statutory or otherwise," included fraud and securities law claims because release, by reference to stock purchase agreement, mentioned all claims involving undisclosed liabilities, a specific class of claims that included claims at issue). *But see, e.g.*, *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938-39 (Tex. 1991) (holding that agreement purporting to release all claims attributable to specific loan transaction between bank and its customer did not apply to subsequent litigation when customer raised claims relating to another bank transaction because agreement limited itself to specific loan and did not cover other transaction); *Baty v. Protech Ins. Agency*, 63 S.W.3d 841, 849-50 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (holding that agreement that is expressly limited to contract claims, does not mention tort claims, and does not purport to release claims of any nature whatsoever is not broad form release and did not extinguish tort claims).

Thus, we conclude that the release is broad, covering any and all claims that might arise out of the accident or State Farm Mutual's handling of claims arising out of the accident; it is not restricted to any single type of claim, as Coppedge-Link alleges. Furthermore, Coppedge-Link's claims are not based solely on conduct that occurred after and independent from the settlement agreement. To the contrary, Coppedge-Link's complaints arise directly from the terms of the settlement agreement, and accordingly, from the handling of claims arising out of the accident. We therefore conclude that the release was sufficient to foreclose all claims complaining of the terms of the settlement agreement between State Farm Mutual and Coppedge-Link, including the provision allowing State Farm Mutual to fund the structured settlement payments by purchasing annuities from its affiliate State Farm Life.

**Coercion and Economic Duress**

Coppedge-Link argues that "[e]ven if the Court interprets the friendly suit release to include the claims asserted in this case, the release is invalid because it was secured by State Farm's coercion and economic duress."

Duress is an affirmative defense in confession and avoidance of the affirmative defense of release. *Brown v. Cain Chem., Inc.*, 837 S.W.2d 239, 242-43 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Once a defendant conclusively establishes the elements of the affirmative defense of release, the burden shifts to the plaintiff to raise a genuine issue of material fact on duress. *Id.* at 243. There can be no duress without the following: 1) a threat or action taken without legal justification; (2) the action or threat was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which

11

it would not otherwise have done and that which it was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection. *HRN, Inc. v. Shell Oil Co.*, 102 S.W.3d 205, 215-16 (Tex. App.—Houston [14th Dist.] 2003, pet. granted); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 443 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Furthermore, economic duress may be claimed only when the party against whom it is claimed was responsible for the claimant's financial distress. *HRN, Inc.*, 102 S.W.3d at 216; *Deer Creek Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198, 203 (Tex. App.—Dallas 1990, no writ).

Coppedge-Link asserted in her response to the motion for summary judgment and in an attached affidavit that she "did not freely agree to the structured settlements from State Farm Life"; she "was forced to accept them." She urges that as a result of State Farm's conduct, her only options were: "1) accept a structured settlement from State Farm Life, 2) accept a lump sum settlement and purchase structured settlements on my own, or 3) have the settlement proceeds placed in the registry of the court." The last two options were not "legitimate choices," according to Coppedge-Link, because "of adverse tax consequences and the low interest rate earned by the court registry." Coppedge-Link contends that State Farm Mutual thus directly or implicitly threatened her with actual or constructive receipt of the settlement proceeds, so that she would accept its structured settlement terms.

Coppedge-Link's summary-judgment evidence fails to raise a fact question on several of the elements of economic duress. First, even if we were to agree that State Farm Mutual's conduct amounted to a threat, *but see Matthews v. Matthews*, 725 S.W.2d 275, 279 (Tex.

12

App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (threatening to do what person has legal right to do cannot form basis of duress), there is no evidence that the threat was imminent. According to the State Farm defendants' summary-judgment evidence (which Coppedge-Link did not dispute), State Farm Mutual attorney, Tom Newton, forwarded the first set of structured settlement proposals on August 22, 1997. In September 1997, Coppedge-Link's counsel, David Pfeuffer, informed Newton that the structured settlement proposals were acceptable. Accordingly, Newton prepared revised settlement and lawsuit documents, including a revised release agreement (to reflect the structured settlement proposals). The release agreement reflected that the annuities used to fund the structured settlement payments would be purchased from State Farm Life. In December 1997, Pfeuffer signed and returned the revised documents. Afterwards, because the structured settlement proposals expired at the end of September, Newton sent new structured settlement quotes to Coppedge-Link from State Farm Mutual. The quotes included the details of the annuities, such as the amount of the payments, the dates they would be made, and the cost of each annuity.

On January 15, 1998, Newton sent the lawsuit documents and settlement materials to the guardians ad litem representing the two Coppedge children. A hearing to obtain court approval and entry of judgment on the settlement agreement was scheduled for January 26, 1998. On that date, Coppedge-Link, on behalf of herself and her children, executed a full and final release, assignment and indemnity agreement. The court signed a judgment, which was approved and signed by Pfeuffer. Thus, according to this summary-judgment evidence, Coppedge-Link was first aware of the terms of the structured settlement agreement in August 1997. The agreement and release were not made final until January 1998. At no time during that period did Coppedge-Link voice her

13

dissatisfaction with the terms of the proposal.[9] And yet, she had several opportunities to express her concerns. We therefore conclude that any restraint that may have existed was not imminent. *See Bank of El Paso v. T.O. Stanley Boot Co.*, 809 S.W.2d 279, 289-90 (Tex. App.—El Paso 1991), *aff'd in part, rev'd in part on other grounds*, 847 S.W.2d 218 (Tex. 1992).

Moreover, Coppedge-Link failed to present evidence that she had no appropriate means of protection. Not only was she represented by counsel, but the guardians ad litem appointed by the court represented the interests of her children, and Coppedge-Link consulted a financial advisor to advise her about structured settlement agreements. She also had other options available to her, including declining to accept the terms of the proposed settlement agreement. *See Bank of El Paso*, 809 S.W.2d at 290 (holding that where party had options available, there was no duress because party had adequate means of protection). Furthermore, the trial court approved the settlement agreement. *See Matthews*, 725 S.W.2d at 278-79 ("Where a demand made is wrongful or unlawful, and it is necessary for the party making such demand to resort to the courts to enforce same, there is no duress, for the one upon whom demand is made has adequate means of protection, and there is no imminent restraint.") (quoting *Dale v. Simon*, 267 S.W. 467, 470 (Tex. Comm'n. App. 1924, judgm't adopted); *State Nat'l Bank of El Paso v. Farah Mfg. Co.*, 678 S.W.2d 661, 684 (Tex. App.—El Paso 1984, writ dism'd by agr.)). In sum, there is no evidence of imminent restraint or that Coppedge-Link had no adequate means of protection, two of the elements of economic

---

[9] In her affidavit attached to her response to the motion for summary judgment, Coppedge-Link states that she was dissatisfied with the financial terms of State Farm Mutual's proposals even before she and her attorney signed the settlement. Coppedge-Link's counsel repeats this sentiment in his affidavit.

duress. We therefore hold that the trial court could have found there was no economic duress as a matter of law and it did not err in granting summary judgment in favor of appellees. *See Deer Creek Ltd.*, 792 S.W.2d at 203 (holding release not invalid in absence of evidence supporting elements of economic duress).

## CONCLUSION

We hold that Coppedge-Link's claims against the State Farm defendants are covered by the release and therefore barred as a matter of law. Furthermore, Coppedge-Link failed to raise a fact issue as to at least two of the elements of her defense of economic duress. We therefore overrule her issues on appeal and affirm the trial court's summary judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 15, 2004

15