Ronnie McCORD, Appellant,

v.

Wallace GOODE, Appellee.

No. 05–08–00939–CV.

Court of Appeals of Texas, Dallas.

Feb. 26, 2010.

Rehearing Overruled April 30, 2010.

Mark J. Carroll, Cedar Hill, TX, for Appellant.

Wallace Goode, Dallas, TX, pro se.

Bill Glaspy, Mesquite, TX, for Appellee.

Before Justices MOSELEY,
FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Ronnie McCord sued Wallace Goode to set aside the transfer of a registered paint horse that McCord claimed he transferred to Goode under duress.[1]  The trial court rendered a take-nothing judgment following a bench trial, from which McCord appeals.  We affirm the trial court's judgment.

### THE TRIAL

The evidence showed that in approximately 2004 Goode allowed McCord to move a house trailer onto Goode's property and live there rent-free.  In exchange, McCord agreed to help with upkeep of the property and train Goode's horses.  This arrangement continued for about three years, until July 2007.  During those three years, McCord, Goode, and another friend, Bob Menton, went into business together buying and selling horses.  The parties referred to their relationship as a partnership, although they never formalized it in writing.  In April 2004, McCord purchased two horses, one of which was a registered paint horse named Colonel Jet Leo.  McCord testified that he purchased those horses for his personal use and not for the partnership.  Menton agreed that he was not a partner with McCord on those horses.  He also testified that the partnership was determined on a "one-on-one horse" (horse-by-horse) basis and that, to his knowledge, Goode was not a partner with McCord in the paint horse.  In September 2007, McCord purchased two mares.  It is undisputed that the mares were purchased as part of the partnership.

The evidence also showed that McCord needed transportation but was unable to get credit.  Goode decided to help McCord and purchased a pick-up truck in his own name and let McCord make the payments.  Goode planned to transfer title to the truck to McCord whenever McCord made the final payment.  The record does not indicate whether the parties had a writing evidencing this agreement.

Goode also purchased a horse trailer that he said was his contribution to the partnership.  McCord testified that the horse trailer was not part of the partnership and that Goode purchased it for McCord just like he did the truck.  Regardless, the trial testimony was undisputed that Goode allowed McCord to purchase the trailer from him by making payments under arrangements similar to the purchase of the truck.

The dispute that is the subject of this lawsuit arose in the summer of 2007.  The record indicates that McCord had told "everyone" that they were not to do anything with Colonel Jet Leo unless he was there.  In July 2007, McCord learned that Goode's son, Justin, and a fellow rancher had taken Colonel Jet Leo to a veterinarian without McCord's permission.  When McCord confronted them about it, Justin said he was just doing what his dad had told him to do and that the horse was half his dad's.  McCord replied, "It may be, but nobody does anything with this horse but me."

When Goode talked to McCord about his confrontation with Justin, Goode told McCord that he wanted to send Colonel Jet Leo to Oklahoma for training.  McCord said he would file theft charges against anyone who took Colonel Jet Leo off the property.  Goode testified that it was at this point he knew the partnership was not going to work, so he asked

---

1.  McCord alleged other grounds for relief that         are not involved in this appeal.

McCord to leave. McCord agreed. They divided the mares and their two colts, but could not agree on the disposition of Colonel Jet Leo.[2] McCord insisted that Colonel Jet Leo was his personal horse and was never part of the partnership. But he testified that Goode threatened to keep the truck and horse trailer if McCord did not transfer the registration papers for Colonel Jet Leo over to him:

> And so we got out there, and he said he wanted to dissolve our partnership. I said, well, all right. And he said, on the mares, which one would you want? And I told him, I said, well, y'all can have all of them, the colts and stuff. He said, no, pick out the one you want. So I did. And he said, well, what are we going to do about the stallion? And I said, why? I said, they are legally mine. He said, well, how are you going to leave out of here? Because I still owed on the horse trailer and the pickup. So I thought about it and reasoned real quick. So I told him, I said, well, I guess you just want me to give you the Colonel.... So, I—in order to buy time, I signed over the papers to Colonel Jet Leo. And I went to trying to figure out where I was going to move, how I was going to pay the horse trailer off and pay off the pickup to where I could come to court and get my horse back.

Goode admitted that he threatened to keep the truck, but said he did so because McCord threatened to have him arrested for horse stealing: "I told him if he called the law on me for taking that horse off the place, that I would see that he walked— left out of there walking." At the time, McCord still owed money to Goode for the truck and the trailer. McCord testified that he felt he had no choice but to give Colonel Jet Leo to Goode. He signed the registration papers and gave them to Goode, but he contends that he did so under duress.

## THE TRIAL COURT'S RULING

After hearing the evidence, the trial court orally pronounced its findings. The court found that McCord and Goode had an informal partnership, they jointly owned Colonel Jet Leo, McCord signed and delivered the paperwork necessary to transfer ownership of Colonel Jet Leo to Goode, and the circumstances surrounding that transfer did not rise to the level of duress. The court rendered a take-nothing judgment against McCord.

## DISCUSSION

In two issues, McCord challenges the legal and factual sufficiency of the evidence to support the court's implied findings that (1) he and Goode jointly owned Colonel Jet Leo, and (2) the circumstances surrounding the transfer of the registration papers for Colonel Jet Leo to Goode did not rise to the level of duress. We address the second issue first.

### Standard of Review

■■■ Neither party requested nor did the trial court make written findings of fact and conclusions of law. When the trial court does not make written findings of fact, we imply all fact findings that are supported by the evidence in favor of the court's ruling. *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 337 (Tex.2009); *Johnson v. Kindred,* 285 S.W.3d 895, 898 (Tex.App.-Dallas 2009, no pet.). However, when a complete reporter's record is brought forward on appeal, as here, the trial court's implied findings may be challenged for legal and factual sufficiency the same as jury findings.

---

2. By this time, Menton was no longer involved in the partnership.

*BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002).

██ When a party challenges the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established the facts in his favor as a matter of law. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001) (per curiam); *Johnson,* 285 S.W.3d at 898. We first examine the record for evidence to support the finding. *Dow Chem.,* 46 S.W.3d at 241. If there is no evidence to support the finding, we then examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We indulge every reasonable inference to support the judgment, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005).

██ When a party challenges the factual sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.,* 46 S.W.3d at 242. We reverse only if, in light of the entire record, the evidence supporting the finding is so weak or the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.*

██ In conducting our review, we are mindful that the fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex.2003).

### Applicable Law

██ Duress requires unlawful conduct or a threat of unlawful conduct of such a character as to destroy the other party's exercise of free will and judgment. *See Dallas County Cmty. Coll. Dist. v. Bolton,* 185 S.W.3d 868, 878–79 (Tex.2005); *Cooper v. Cochran,* 288 S.W.3d 522, 533 (Tex.App.-Dallas 2009, r. 53.7(f) motion granted) (op. on reh'g); *Deer Creek Ltd. v. N. Am. Mortgage Co.,* 792 S.W.2d 198, 200 (Tex.App.-Dallas 1990, no writ). The threat must be imminent and the party must have no present means of protection. *See Bolton,* 185 S.W.3d at 879; *Cooper,* 288 S.W.3d at 533; *Deer Creek,* 792 S.W.2d at 200. Duress must be shown from the acts or conduct of the party accused of duress, not the emotions of the purported victim. *See Brown v. Cain Chem., Inc.,* 837 S.W.2d 239, 244 (Tex.App.-Houston [1st Dist.] 1992, writ denied). The burden to prove duress is on the party claiming it. TEX.R. CIV. P. 94; *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 650 (Tex.1988). Generally, what constitutes duress is a question of law, but whether duress exists under a particular set of circumstances is a fact question. *See Wright v. Sydow,* 173 S.W.3d 534, 544 (Tex.App.-Houston [14th Dist.] 2004, pet. denied).

### Analysis

██ To prevail on his legal sufficiency challenge, McCord must first show that there is no evidence to support the trial judge's failure to find that he acted under duress. *See Dow Chem.,* 46 S.W.3d at 241–42. If there is no evidence to support the adverse finding, then McCord must show that the evidence conclusively established each of the elements of duress as a matter of law. *See id.* To prevail on his factual sufficiency challenge, McCord must show that the failure to find duress is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See id.*

McCord argues that it is undisputed that he owned the truck and horse trailer. He contends that Goode admitted that the truck and horse trailer belonged to McCord at the time Goode threatened to keep the truck and, presumably, the horse trailer. However, McCord does not cite the record where this admission can be found. Instead, the record shows that the truck and trailer were in Goode's name. And McCord admitted he still owed money to Goode for both the truck and the trailer when this dispute over Colonel Jet Leo arose in July 2007.[3]

Because the evidence showed that Goode still owned the truck when he made the threat to keep the truck, McCord has not shown that Goode's threat was unlawful. *See* Tex. Transp. Code Ann. §§ 501.001–.179 (Vernon 2007 & Supp. 2009) (governing transfers of motor vehicles); *Matthews v. Matthews*, 725 S.W.2d 275, 279 (Tex. App.-Houston [1st Dist.] 1986, no writ) (op. on reh'g). There can be no duress when the conduct threatened is not unlawful. *See Matthews*, 725 S.W.2d at 279. In addition, McCord stated that when Goode threatened to make him leave "out of there walking," he "thought about it and reasoned real quick." He said he decided to transfer the registration papers to Goode "to buy time" to find a place to live and pay off the truck and trailer before trying to get the horse back. The evidence indicates that McCord thoughtfully considered his options and decided it was best to transfer the registration papers. Consequently, we conclude that the evidence is legally and factually sufficient to support the trial court's implied finding that McCord did not act under duress when he

transferred the registration papers for Colonel Jet Leo to Goode.

We resolve appellant's second issue against him. Because of our disposition of this issue, we do not need to decide McCord's first issue, which challenges the sufficiency of the evidence of the trial court's implied finding that Goode and McCord jointly owned Colonel Jet Leo.

We affirm the trial court's judgment.

---

**3.** In fact, the record shows that as late as November 2007, Goode had not transferred the certificate of title to the truck to McCord because the final payment on the truck had bounced. *See Dean v. Lowery*, 952 S.W.2d 637, 639 (Tex.App.-Beaumont 1997, pet. denied) (certificate of title creates rebuttable presumption that named owner is actual owner of vehicle).