**Affirm in part; Reverse and Render in part; Reverse and Remand in part; Opinion filed August 31, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00459-CV

## IN THE INTEREST OF C.E.W., a Child

## CARRIE STURDIVANT WOLFF, Appellant
## V.
## MITCHELL HARRY WOLFF, DAVID HANSCHEN, AND CLOUSE DUNN, LLP, Appellees

On Appeal from the 366th Judicial District Court
Collin County, Texas
Trial Court Cause No. 366-56270-2011

## MEMORANDUM OPINION
Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Stoddart

Appellant Carrie Wolff appeals from the final decree of divorce entered by the trial court following a bench trial. In four issues Carrie argues the trial court abused its discretion by failing to confirm the marital residence as Carrie's separate property; the trial court abused its discretion by characterizing two accounts as appellee Mitchell Wolff's separate property; the trial court abused its discretion by awarding more than 100 percent of the community estate to Mitchell; and the award of attorney's fees is not supported by legally sufficient evidence.[1] We affirm the

---

[1] Carrie also argued the trial court abused its discretion by ordering her money from the sale of the homestead be used to reimburse Mitchell for income tax liabilities and attorney's fees. However, in her reply brief, Carrie concedes she failed to preserve this issue for appeal. We do not address this argument.

trial court's judgment that the marital home was community property and one of the retirement accounts was appellee Mitchell Wolff's separate property; we reverse the trial court's judgment that a different retirement account was Mitchell's separate property and render judgment that account was community property; and we reverse the trial court's award of attorney's fees to appellees David Hanschen and Clouse Dunn, LLP and order they take nothing on their claims against Carrie. We remand this case for a new division of the community estate in light of this opinion.

The facts relevant to this appeal are few. Mitchell and Carrie divorced, and the divorce decree divided the marital estate. Following a bench trial, the trial court concluded their marital residence was a community asset and concluded two retirement accounts were Mitchell's separate property. Carrie appeals the characterization of these portions of the marital estate. The trial court did not enter findings of fact or conclusions of law.

## A.    Separate v. Community Property

In her second and third issues, Carrie argues the trial court mischaracterized multiple pieces of property. She argues the trial court abused its discretion when it determined the marital residence was community property and when it determined two retirement accounts were Mitchell's separate property.

### 1.  Standard of Review

We review a trial court's judgment concerning division of property for an abuse of discretion. *See Reisler v. Reisler*, 439 S.W.3d 615, 619 (Tex. App.—Dallas 2014, no pet.). The trial court is afforded broad discretion in dividing the community estate and an appellate court must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Id.* A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any references to guiding rules and principles. *Gonzalez v. Gonzalez*, 331 S.W.3d 864,

866 (Tex. App.—Dallas 2011, no pet.). In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). To determine whether the trial court abused its discretion we consider whether the trial court (1) had sufficient evidence on which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id*. An abuse of discretion generally does not occur if some evidence of a substantive and probative character exists to support the trial court's decision. *Id.* In the absence of findings of fact, we imply all findings necessary to support the judgment.

### 2. *Presumption Property is Community*

We presume that property possessed by either spouse during marriage is community property. TEX. FAM. CODE ANN. § 3.003 (West 2006). A party seeking to challenge this presumption must do so by clear and convincing evidence. *Id.* Clear and convincing evidence is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2014).

If an appellate court finds reversible error in any part of the trial court's property division that materially affects the just and right division of the community estate, it must remand for a new division of the entire community estate. *Reisler*, 439 S.W.3d at 620.

**B.      Division of the Parties' Assets**

*1.      Marital Residence*

Carrie's second issue argues the trial court abused its discretion by designating the marital residence on Northbrook Drive (Northbrook Property) as community property. She asserts she overcame the presumption of community property by presenting a deed signed by Mitchell conveying the Northbrook Property to her, thus making it her separate property. In response, Mitchell asserts the record shows the deed was void on account of fraud, duress, undue influence, and mistake.

"A deed for property from one spouse as grantor to the other spouse as grantee creates a rebuttable presumption that the grantee spouse received the property as separate property by gift." *Clay v. Clay*, No. 05-13-00624-CV, 2014 WL 2993812, at *2 (Tex. App.—Dallas June 30, 2014, pet. denied) (mem. op.) (citing *In re Marriage of Skarda*, 345 S.W.3d 665, 671 (Tex. App.—Amarillo 2011, no pet.); *Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied)). The presumption may be rebutted by proof the deed was procured by fraud, accident or mistake. *Id.* (citing *Magness*, 241 S.W.3d at 912–13). Duress also is a ground for annulling a deed. *See Wilhite v. Davis*, 298 S.W.2d 928 (Tex. Civ. App.—Dallas 1957, no writ); *see also Long v. Long*, 234 S.W.3d 34, 40 (Tex. App.—El Paso 2007, pet. denied) (citing *Roberts v. Roberts*, 999 S.W.2d 424, 431 (Tex. App.—El Paso 1999, no pet.)); *Dyer v. Dyer*, 616 S.W.2d 663, 665 (Tex. Civ. App.—Corpus Christi 1981, writ dism'd) (citing *Goodwin v. City of Dallas*, 496 S.W.2d 722 (Tex. Civ. App.—Waco 1973, no writ)).

Whether property given by one spouse to the other is a gift and the recipient's separate property is a fact-intensive decision. *Clay*, 2014 WL 2993812, at *2 (citing *In re Marriage of Skarda*, 345 S.W.3d at 671). The trial court, as factfinder in this case, is the sole judge of the credibility of the witnesses and may accept or reject any or all of a witness's testimony. *Id.*

(citing *In re Marriage of Skarda*, 345 S.W.3d at 672; *Magness*, 241 S.W.3d at 913). The trial court is free to believe or disbelieve any or all of the testimony. *Id.* (citing *Cardwell v. Cardwell*, 195 S.W.3d 856, 859 (Tex. App.—Dallas 2006, no pet.)).

### a. The Deed Conveying the Northbrook Property

The parties agree that Mitchell signed a deed conveying the Northbrook Property to Carrie. The deed was admitted as an exhibit at trial, and it created a rebuttable presumption that Carrie received the property as separate property by gift. *See id.* The parties dispute whether the trial court could have properly concluded the deed was procured by duress, fraud, accident or mistake.

Carrie testified that before Mitchell signed the deed, she met with a family lawyer who prepared the deed. On the day Mitchell signed the deed, he had been traveling to Las Vegas and she was mad at him about his trip because "he kept lying to me about where he was. And I was concerned that he wasn't acting like somebody that wanted to stay married." Mitchell did not see the deed until he arrived home from his trip.

Mitchell, a commercial real estate broker who testified he knows what it means to sign a deed, testified that on the night he signed the deed, Carrie said: "here's the deed, if you don't sign it tonight, I'm going to take [the child] and we're going to go." He testified he signed the deed "[b]ecause Carrie was going to take my child out of the house . . . Because she said she was and she had done it before." Mitchell believed Carrie planned to take their child that night unless he signed the deed. He did not "treat [signing the deed] like a real estate transaction, that's for sure. I thought I was signing a document which deeded the property into a community estate, which was already there." He testified he did not review the document, it was a "chaotic" night, Carrie was upset, and she "was going to take my child away."

Carrie had the telephone number of a 24-hour notary service to notarize the deed after

–5–

Mitchell signed it, and she recorded the deed the following day. Mitchell noted that if the deed had been his idea, he would have had an attorney review it, would have signed it in his office with a notary from his office, and he would not have called a notary in the middle of the night. Carrie testified she did not tell Mitchell he had to sign the deed that night.

The special warranty deed lists Mitchell as the grantor and Carrie as the grantee, and it grants all of Mitchell's his interest in the property to Carrie. Further, it states: "Grantor grants and conveys the property to Grantee as her sole and separate property."

### b. Deed Procured Under Duress

Duress requires unlawful conduct or a threat of unlawful conduct of such a character as to destroy the other party's exercise of free will and judgment. *McCord v. Goode*, 308 S.W.3d 409, 413 (Tex. App.—Dallas 2010, no pet.) (citing *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878–79 (Tex. 2005); *Cooper v. Cochran*, 288 S.W.3d 522, 533 (Tex. App.—Dallas 2009, r. 53.7(f) motion granted) (op. on reh'g); *Deer Creek Ltd. v. N. Am. Mortgage Co.*, 792 S.W.2d 198, 200 (Tex. App.—Dallas 1990, no writ)). The threat must be imminent and the party must have no present means of protection. *Id.* (citing *Bolton*, 185 S.W.3d at 879; *Cooper*, 288 S.W.3d at 533; *Deer Creek*, 792 S.W.2d at 200). Duress must be shown from the acts or conduct of the party accused of duress, not the emotions of the purported victim. *Id.* (citing *Brown v. Cain Chem., Inc.*, 837 S.W.2d 239, 244 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). There can be no duress when the conduct threatened is not unlawful. *Id.* at 414.

The record shows Carrie threatened to take the parties' child away if Mitchell did not sign the deed. Mitchell considered her threat credible because she had done it before and Carrie was upset with him. The threat certainly was imminent—Carrie threatened to take their child that night—and Mitchell had no immediate means of protection to keep her from executing on her threat and removing their child. The trial court could have concluded based on Mitchell's

testimony that Carrie's threat destroyed his ability to exercise his free will and judgment.

Implying all findings necessary to support the judgment, we conclude the trial court did not abuse its discretion by concluding Mitchell met his burden to show the deed to the Northbrook Property was procured by duress and, thus, the Northbrook Property must be treated as community property. There is some evidence of a substantive and probative character to support the trial court's decision. We overrule Carrie's second issue.

### 2.    *Retirement Accounts*

In her third issue, Carrie argues, in part, that the trial court abused its discretion by characterizing two retirement accounts as Mitchell's separate property: (1) an IMS Securities SEP IRA account ending in #46 and (2) an IMS Securities SEP IRA account ending in #63.[2] She asserts the evidence is legally and factually insufficient to support these awards and requests we render judgment they are community assets.[3]

Mitchell responds by arguing that without findings of fact or conclusions of law by the trial court, Mitchell is entitled to an implied finding that the trial court's division is just and right, notwithstanding any purported mischaracterization of the retirement accounts. Mitchell cites *Pace v. Pace*, 160 S.W.3d 706, 715-16 (Tex. App.—Dallas 2005, pet. denied) to support his argument. In *Pace*, the trial court determined its property division was just and right even if it mischaracterized property, which we interpreted to mean that "the court would have divided the property the same way regardless of whether the property is separate or community." *Id*. at 715-16. However, here, the trial court's Final Decree of Divorce states: "The Court finds that the Parties have accumulated community property during their marriage and that the following

---

[2] Initially Carrie also challenged the trial court's determination that an NFP Securities SEP IRA account ending in #84 is Mitchell's separate property. However, in her reply brief, she concedes the evidence supports confirmation that this account is Mitchell's separate property. We do not consider the characterization of this account.

[3] Without any citation to the record, appellee's brief states that "the award of these accounts in the Final Decree was actually the result of an agreement announced at one of the Post-Trial Hearings." After reviewing the transcripts of the post-trial hearings, we were unable to find an agreement by the parties about the accounts.

division is a just and right division of the Parties' marital estate, having due regard for the rights of each Party." We do not consider the trial court's language equivalent to the language in *Pace*. In the case before us, the trial court indicated its division of property was just and right. It did not indicate the division would be just and right if it mischaracterized the property. We do not consider *Pace* to be on point.

To analyze the accounts, we again begin with the presumption that any property owned by either spouse during or upon dissolution of the marriage is community property. TEX. FAM. CODE ANN. § 3.003. That presumption can be overcome by clear and convincing evidence that the property is separate property. *Id*.

a.       IMS Securities SEP IRA account ending in #46

The trial court admitted Respondent's Exhibit 20, titled First Amended Sworn Inventory and Appraisement of Respondent, without objection. Exhibit 20, prepared by Mitchell, categorizes property as (1) his separate property, (2) Carrie's separate property, or (3) the parties' community property. Exhibit 20 lists the account ending in #46 as community property. The trial court also admitted Respondent's Exhibits 18 and 19, both of which provided Mitchell's proposed property division. Exhibits 18 and 19 address the division of assets that are listed as community assets in Exhibit 20; Exhibits 18 and 19 do not include separate property. In both exhibits, Mitchell suggested the full value of the IMS Securities SEP IRA account ending in #46 be awarded to him.

Despite the fact that the only evidence in the record suggests that the IMS Securities SEP IRA account ending in #46 is community property, the trial court concluded it was Mitchell's separate property. There is no evidence in this record that supports the trial court's determination that the IMS Securities SEP IRA account ending in #46 is Mitchell's separate property. Rather, Mitchell's exhibits admitted at trial confirm it is community property. We

conclude the trial court erred by determining the IMS Securities SEP IRA account ending in #46 is community property. We sustain Carrie's third issue to this extent.

b.      IMS Securities SEP IRA account ending in #63

Exhibits 18 and 19 do not include the IMS Securities SEP IRA account ending in #63. Respondent's Exhibit 20 lists the IMS Securities SEP IRA account ending in #63 as Mitchell's separate property. Respondent's Exhibit 22, titled Mitch's List of Separate Property Owned Before Marriage, also was admitted, and it includes the IMS Securities SEP IRA account ending in #63. Mitchell testified at trial that the items listed on Exhibit 22 were his separate property before the parties married. Mitchell also executed an affidavit, admitted at trial as Respondent's Exhibit 23, in which he averred he owned "an IMS Securities, Inc. Rollover IRA account ending #0463, held in my name" prior to his marriage to Carrie. Based on this evidence, we cannot conclude the trial court abused its discretion by concluding Mitchell overcame the community presumption as to the IMS Securities SEP IRA account ending in #63 is his separate property. We overrule Carrie's third issue to this extent.

c.      Reimbursement of Attorney's Fees

Finally in her third issue, Carrie asserts the trial court erred by ordering Mitchell, rather than the community, be reimbursed for her attorney's fees. Carrie argues that although Mitchell testified he paid Carrie's attorney's fees, he did not testify he did so out of his separate property and so the trial court must assume Mitchell paid the fees using community property. Therefore, she believes she should reimburse the community for the difference between her attorney's fees and Mitchell's and then that amount should be part of the community division. However, in her reply brief, Carrie moves this argument into her fifth issue in which she argues the trial court abused its discretion by awarding more than 100 percent of the community estate to Mitchell.

In light of our resolution that the trial court mischaracterized the IMS Securities SEP IRA

account ending in #46, this case must be remanded to the trial court for it to reconsider its division of the parties' assets. *See Reisler*, 439 S.W.3d at 620. Therefore, we do not address Carrie's fifth issue, including the third argument in her third issue. *See* TEX. R. APP. P. 47.1.

## C.       Attorney's Fees

In her first issue, Carrie asserts the evidence is legally insufficient to support the judgment for attorney's fees in favor of Clouse Dunn and Hanschen because there is no evidence establishing an agreement by Carrie to pay Clouse Dunn or Hanschen for their services.[4] We agree.

Clouse Dunn and Hanschen each sued Carrie for breach of contract. The elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the contract; and (4) damages as a result of the breach. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc*., 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.). However, there is no evidence in this record of a valid contract between Carrie and Clouse Dunn or Hanschen in which Carrie agreed to pay for their legal services. Although there is evidence Clouse Dunn and Hanschen sought recovery from Carrie for legal fees, there is not any evidence she contracted pay those fees. Without evidence of the existence of a contract, we conclude the trial court erred by finding Carrie breached the contract. We sustain Carrie's first issue.

## D.       Conclusion

We reverse the trial court's judgment awarding legal fees to Clouse Dunn and Hanschen and we render judgment that Clouse Dunn and Hanschen take nothing on their claims against

---

[4] Hanschen argues Carrie's appeal is untimely and Carrie failed to perfect her appeal. Although the trial court entered a "Final Judgment as Between Carrie Sturdivant Wolff and David Hanschen" on November 25, 2013, and Carrie did not immediately appeal that judgment, the November 25, 2013 judgment was not final for purposes of appeal because it did not dispose of all parties and all claims in the lawsuit and Carrie had no right to an interlocutory appeal in this case. *See Lehmann v. Har–Con Corp*., 39 S.W.3d 191, 195 (Tex. 2001). Further, Carrie's Notice of Appeal did not have to list every interlocutory ruling, such as the November 25, 2013 judgment, she might challenge on appeal. *See  Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co*., 393 S.W.3d 379, 386 (Tex. App.—Dallas 2012, no pet.).

Carrie.

We affirm the trial court's judgment that the marital home was community property and the IMS Securities SEP IRA account ending in #63 was Mitchell's separate property. We reverse the trial court's final decree of divorce in so far as it characterized the IMS Securities SEP IRA account ending in #46 as Mitchell's separate property. We render judgment that the IMS Securities SEP IRA account ending in #46 is community property. We remand this case to the trial court for a new division of the community estate.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

140459F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.E.W., a Child
CARRIE STURDIVANT WOLFF,
Appellant

No. 05-14-00459-CV      V.

MITCHELL HARRY WOLFF, DAVID
HANSCHEN, AND CLOUSE DUNN, LLP,
Appellees

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-56270-2011.
Opinion delivered by Justice Stoddart.
Justices Lang and Schenck participating.

In accordance with this Court's opinion of this date, the trial court's April 7, 2014 Final Decree of Divorce is **REVERSED** in part as to the division of the marital property and this cause is **REMANDED** to the trial court to determine the division of marital property. We **REVERSE** the trial court's final decree of divorce in so far as it characterized the IMS Securities SEP IRA account ending in #46 as Mitchell Harry Wolff's separate property. We **RENDER** judgment that the IMS Securities SEP IRA account ending in #46 is community property.

The trial court's April 7, 2014 Final Decree of Divorce is **AFFIRMED** in part. We **AFFIRM** the IMS Securities SEP IRA account ending in #63 was Mitchell Wolff's separate property. We **AFFIRM** the house located on Northbrook Drive was community property.

The trial court's October 31, 2013 Final Judgment as Between Carrie Sturdivant Wolff and Clouse Dunn, LLP is **REVERSED** and judgment is **RENDERED** that Clouse Dunn, LLP take nothing against Carrie Sturdivant Wolff.

The trial court's November 25, 2013 Final Judgment as Between Carrie Sturdivant Wolff and David Hanschen is **REVERSED** and judgment is **RENDERED** that David Hanschen take nothing from Carrie Sturdivant Wolff.

It is **ORDERED** that each party bear its own costs of appeal.

Judgment entered this 31st day of August, 2015.