**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED and Opinion Filed July 29, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-21-00124-CV

**GANGULY HOLDINGS, L.L.C. AND TD CHILDCARE, L.L.C., Appellants**
**V.**
**KER-SEVA LTD., KER-SEVA MANAGEMENT, LTD. CO., AND JASTINDER JAWANDA, Appellees**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-03979-2018**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Garcia

Appellants purchased an operating Montessori school from appellees Ker-Seva Ltd. and Ker-Seva Management, Ltd. Co. Then appellants sued appellees on a variety of legal theories including breach of contract and fraud. After a bench trial, the trial judge rendered a final judgment that ordered appellant Ganguly Holdings, L.L.C. to take nothing and awarded appellant TD Childcare, L.L.C. less than it had sought to recover. On appeal, appellants assert four issues challenging the

sufficiency of the evidence to support the judgment. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

We draw the following facts from the evidence admitted at trial.

At some point before mid-2017, Jaideep Ganguly became interested in buying a Montessori school. A real-estate broker named Neal Agrawal brought a property to Ganguly's attention—a school in McKinney, Texas, that was operating as Montessori Academy at Westridge. Ganguly was interested in the school, obtained financial information about it, and proceeded with the purchase.

The purchase involved two separate contracts—one for the sale of the real estate and building that housed the school, and one for the school's business. The real-estate contract listed Ganguly as the buyer and listed the seller as "Ker-Seva Ltd dba Montessori Academy at Westridge." The contract price was $3.8 million. The contract provided, "This contract . . . may not be changed except in writing." The real-estate contract was undated.

The contract for the sale of the business was entitled "ASSET PURCHASE AGREEMENT" ("APA") and was dated April 14, 2017. The APA listed Ganguly as the buyer and listed the sellers as "Ker-Seva Ltd dba Montessori Academy at Westridge" and its general partner "Ker-Seva Management, Ltd., Co." The contract price was $450,000. Appellee Jastinder Jawanda and Baljit Jawanda (who is not a

party to this litigation) executed both the APA and the real-estate contract on behalf of the sellers.

The parties later executed a written amendment to the real-estate contract reducing the purchase price from $3.8 million to $3.35 million. It is not clear when the amendment was executed, but it recites that it is effective as of April 14, 2017.

Ganguly testified that he had the property inspected and that the inspector, Sean Green, gave him a report dated May 6, 2017. The report raised several issues with the property's condition, including damage to the roof, structural and hail damage to the stucco siding, and problems with the rooftop HVAC units.

Next, the parties amended the real-estate contract with a written amendment effective May 22, 2017. The amendment added provisions in which Ker-Seva agreed to perform certain repairs to the building before closing.

Next, the parties executed a document that amended both the real-estate contract and the APA, effective June 15, 2017. Among other things, the amendment (1) increased the real-estate price from $3.35 million to $3.38 million; (2) reduced the APA price from $450,000 to $405,000; and (3) noted that Ganguly had assigned his rights under the real-estate contract to appellant Ganguly Holdings, LLC and his rights under the APA to appellant TD Childcare, LLC.

Ker-Seva Ltd and TD Childcare executed an amendment to the APA effective July 17, 2017, that recited one change: "All exhibits referenced in the Asset Purchase Agreement are deleted."

On July 19, 2017, appellants and the two Ker-Seva entities executed a further amendment that changed the closing date for both agreements to July 21, 2017, and also, like the previous amendment, deleted a list of exhibits to the APA.

Ganguly testified that the transactions closed on July 21, 2017. He also testified that the repairs Ker-Seva had agreed to do were not done before closing. According to Ganguly, about a week before closing, Jawanda told him that the insurance money had not come through and Jawanda did not have the money to make the repairs. Jawanda orally proposed that the parties agree to allow the repairs to be done after closing, and Ganguly agreed. Ganguly testified that he could not delay the closing until after the repairs were done because his lender had set a deadline of July 28, and Ganguly would have had to get re-approved if they missed the deadline. Also, the interest rate on his loan might go up.

Ganguly further testified that "Ker-Seva" continued to occupy and operate the school through July 31, 2017. According to Ganguly, he and Jawanda agreed that Jawanda would receive all the revenues and pay all the expenses of the school through July 31, 2017. Ganguly testified that Ganguly Holdings took possession of the property on August 1, 2017, and TD Holdings began operating the school on that same date.

After closing, Ganguly and Jawanda communicated about appellees' remaining obligations to appellants, but Ganguly testified that Ker-Seva had not made the promised repairs by the time of trial. He further testified that in early 2018,

Jawanda communicated to Ganguly that a check was ready and Ganguly should come pick it up. Ganguly's wife went to Jawanda's "front desk" and picked up a check for $85,000. Although Ganguly did not find the amount acceptable, he cashed it.

## B.    Procedural History

In August 2018, appellants Ganguly Holdings and TD Childcare sued appellees Ker-Seva Ltd. ("Ker-Seva"), Ker-Seva Management, Ltd. Co. ("Ker-Seva Management"), and Jawanda.

Appellees answered. They made a general denial and also asserted the defenses of waiver, and accord and satisfaction.

Appellants amended their petition three times. In their third amended petition, filed shortly before trial, they asserted numerous legal theories of recovery against appellees. Only the following claims are at issue in this appeal: (1) Ganguly Holdings' breach-of-contract claim against Ker-Seva; (2) TD Childcare's breach-of-fiduciary-duty claims against all appellees; (3) TD Childcare's breach-of-contract claims against both Ker-Seva entities; and (4) TD Childcare's fraudulent-misrepresentation claim against Jawanda.

The case was tried without a jury and via Zoom teleconference over two days in September 2020. The parties agreed that they would submit their attorney's fees claims to the trial court through motions rather than during the bench trial. Agrawal,

Ganguly, and Jawanda were the only witnesses. The parties later filed documents in support of their respective requests for attorney's fees.

In January 2021, the trial judge signed a final judgment. The judgment ordered Ganguly Holdings to take nothing on its claims. The judgment awarded TD Childcare $40,032.92 against Ker-Seva and Ker-Seva Management, jointly and severally, and ordered TD Childcare to take nothing on its claims against Jawanda. The judgment did not specify the legal theories supporting TD Childcare's recovery against the Ker-Seva entities. The judgment also awarded TD Childcare about $18,000 in attorney's fees for representation in the trial court, plus contingent appellate attorney's fees.

No findings of fact or conclusions of law were requested or made. Appellants timely appealed.

## II. STANDARDS OF REVIEW

Appellants raise four issues on appeal, all of which challenge the legal and factual sufficiency of the evidence to support the judgment as to certain claims. The following rules and standards of review apply to appellants' issues.

In a bench trial, the trial judge is the sole judge of the witnesses' credibility. *Weisfeld v. Tex. Land Fin. Co.*, 162 S.W.3d 379, 380 (Tex. App.—Dallas 2005, no pet.). Generally, the judge may accept or reject all or any part of a witness's testimony. *See id.* at 380–81. However, the judge "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions

–6–

and inconsistencies, and could have been readily controverted." *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005) (footnote omitted) (stating rule applicable to jurors); *see also Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994) (trial judge's findings are reviewed for sufficiency of the evidence just like jury findings).

When the trial judge does not make findings of fact, we imply all necessary findings in support of the judgment. *United Med. Supply Co., Inc. v. Ansell Healthcare Prods., Inc.*, 476 S.W.3d 84, 89 (Tex. App.—Dallas 2015, pet. denied). When a complete reporter's record is brought forward on appeal, as has been done in this case, the trial judge's implied findings may be challenged for legal and factual sufficiency of the evidence. *See McCord v. Goode*, 308 S.W.3d 409, 412 (Tex. App.—Dallas 2010, no pet.). We may uphold the judgment on any theory supported by the pleadings and the evidence. *Weisfeld*, 162 S.W.3d at 381.

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party had the burden of proof, it must show that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In our review, we must credit evidence favorable to the finding if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827. If there is no evidence to support the finding, we then review the entire record to determine if the contrary proposition is established as a matter of

law. *Dow Chem. Co.*, 46 S.W.3d at 241. We sustain the point only if the contrary proposition is conclusively established. *Id.*

When an appellant challenges the factual sufficiency of the evidence supporting an adverse finding on an issue on which the appellant had the burden of proof, it must show that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We must consider and weigh all of the evidence, and we set the finding aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that the finding is clearly wrong and unjust. *Id.*

When an appellant attacks the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must show that no evidence supports the finding. *Guillory v. Dietrich*, 598 S.W.3d 284, 293 (Tex. App.—Dallas 2020, pet. denied). When evidence is so weak that it does no more than create a surmise or suspicion of the matter to be proved, the evidence is no more than a scintilla and is, in legal effect, no evidence. *Id.* The evidence is legally sufficient if it suffices to enable reasonable and fair-minded people to reach the finding under review. *City of Keller*, 168 S.W.3d at 827. In conducting our review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id.* at 822. We must credit evidence favorable to the finding if a reasonable person could, and we must disregard contrary evidence unless a reasonable person could not. *Id.* at 827.

When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that there is insufficient evidence to support the adverse finding. *Hoss v. Alardin*, 338 S.W.3d 635, 651 (Tex. App.—Dallas 2011, no pet.). In reviewing the challenge, we consider all the evidence in the record and set the finding aside only if the evidence supporting the finding is so weak or the finding is so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Id*.

Appellants were not required to preserve their sufficiency complaints in the trial court. *See* TEX. R. APP. P. 33.1(d).

### III. ANALYSIS

**A. Issue One: Is the evidence legally or factually insufficient to support the take-nothing judgment as to Ganguly Holdings' breach-of-contract claim against Ker-Seva?**

In appellants' first issue, appellant Ganguly Holdings contends that the evidence is legally or factually insufficient to support the take-nothing judgment on Ganguly Holdings' breach-of-contract claim against Ker-Seva for failing to repair the school building's roof, stucco, and HVAC units. Ganguly Holdings argues that (1) it proved the elements of its claim by conclusive or overwhelming evidence and (2) Ker-Seva adduced no or insufficient evidence of its pleaded affirmative defenses of waiver and accord and satisfaction. Ker-Seva responds that the evidence was sufficient to support a determination that Ganguly Holdings suffered no damages.

We agree with Ganguly Holdings for the following reasons.

## 1.     Breach of Contract Elements

The elements of breach of contract are (i) a valid contract, (ii) performance or tendered performance by the plaintiff, (iii) breach by the defendant, and (iv) damages sustained by the plaintiff as a result of that breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

### a.     Valid Contract

As to the first element, Ganguly Holdings introduced the real-estate contract and four of the five amendments into evidence. Moreover, appellees themselves introduced the real-estate contract and all five amendments into evidence. Ker-Seva did not dispute the validity of any of the documents. We decide that the evidence conclusively established the existence of a valid contract between the parties. *See Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019) (evidence is conclusive if it leaves no room for ordinary minds to differ as to the conclusion to be drawn from it).

### b.     Ganguly Holdings' Performance

As to the second element, performance by Ganguly Holdings, Ganguly testified without contradiction that the purchase closed on July 21, 2017, and that Ganguly Holdings paid the contract price for the property at closing. We see no evidence that Ganguly Holding did not perform. We decide that the evidence conclusively established that Ganguly Holdings performed its obligations under the

–10–

real-estate contract. *See City of Keller*, 168 S.W.3d at 820 ("Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted.") (footnote omitted).

### c. Ker-Seva's Breach

As to the third element, breach by Ker-Seva, Ganguly Holdings argues that Ker-Seva breached the May 22, 2017 amendment to the real-estate contract by failing to repair the building's roof, stucco siding, and three rooftop HVAC units. To assess Ganguly Holdings' argument, we must ascertain precisely what Ker-Seva's contractual obligations were. *See Gaspar v. Lawnpro, Inc.*, 372 S.W.3d 754, 757 (Tex. App.—Dallas 2012, no pet.) (party breaches contract if it fails to do something it promised to do).

The May 22 amendment included the following provision:

> ☒ C. <u>Repairs</u>: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing:
> 1. The roof has sustained enough hail damage to warrant replacement (per Sean Green). Seller to repair/replace the roof.
> 2. The stucco sidings are cracking/peeling in multiple places around the building. Seller to repair/replace the Stucco.
> 3. The packaged HVAC on top of Mr. Jawanda's office is neither cooling nor heating. The 2 units on top of the infant's classrooms are not heating. All the three units to be repaired.
> 4. Seller to give a credit of $5,000 to buyer at closing.

We agree with Ganguly Holdings that Section C of the May 22 amendment required Ker-Seva to repair or replace the building's roof, repair or replace the stucco siding, and repair three HVAC units before closing. Moreover, Ganguly testified without contradiction that he and Jawanda orally agreed to extend the repair deadline until

–11–

after closing. *See City of Keller*, 168 S.W.3d at 820 ("Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted.") (footnote omitted). Such an oral extension agreement is enforceable. *See Law Office of Andrew L. Jones, P.C. v. Schachar*, No. 05-19-00188-CV, 2020 WL 633677, at *3 (Tex. App.—Dallas Feb. 11, 2020, no pet.) (mem. op.) (oral modification extending time for performance is enforceable even if contract contains no-oral-modification clause and even if contract is legally required to be in writing). Although there is no evidence that the parties agreed to a deadline for Ker-Seva to perform the repairs, we imply a term that Ker-Seva had to perform the repairs within a reasonable time after closing. *See Chen v. Parkwood Creek Owner's Ass'n, Inc.*, No. 05-10-01511-CV, 2012 WL 3759032, at *3 n.4 (Tex. App.—Dallas Aug. 30, 2012, no pet.) (mem. op.) ("Where the contract does not specify a time for performance, the law implies a reasonable time based on the facts and circumstances existing on the date of the contract.").

Both Ganguly and Jawanda testified that as of the time of trial, more than two years after closing, Ker-Seva had not made the repairs identified in the May 22 amendment. *See City of Keller*, 168 S.W.3d at 815 ("Undisputed contrary evidence may also become conclusive when a party admits it is true."). We decide that the evidence conclusively established that Ker-Seva breached its contractual duties to repair or replace the roof and stucco and to repair the HVAC units.

### d. Damages Resulting from the Breach

Finally, Ganguly Holdings argues that unrebutted evidence established that it sustained damages resulting from Ker-Seva's failure to repair the building per the contract. For example, property inspector Sean Green's report detailing the damage to the building was admitted into evidence. Jawanda testified that he did not dispute that the building was damaged. The parties introduced multiple estimates and reports regarding the cost to repair the building's roof, stucco, and HVAC. Appellants introduced into evidence a document indicating that an insurance company paid "Kaur Limited, Inc." just over $184,000 on a building-loss claim, and Ganguly testified that he understood that Kaur is another entity owned by Jawanda. Ganguly testified that he had spent about $120,000 just to have the roof partially repaired.

In response, Ker-Seva argues that the evidence supports an implied finding that Ganguly Holdings had no damages because Jawanda gave Ganguly an $85,000 check in early 2018, several months after closing. Both sides introduced a copy of this check into evidence:

–13–

(Account numbers omitted.) Ker-Seva's argument proceeds along these lines:

- The parties agreed that Ker-Seva would perform only the repairs identified in Sean Green's inspection report.

- The Green report yielded three roughly contemporaneous estimates, all of which were less than $85,000.

- Ganguly Holdings' damages theory improperly relied on other evaluations that encompassed more work than the Green report contemplated.

- The trial judge was entitled to consider all the estimates and evaluations in evidence and to conclude that the $85,000 payment eliminated any damages.

In its reply brief, Ganguly Holdings contends that Ker-Seva's argument fails because (1) Ker-Seva did not plead the affirmative defense of offset and (2) the May 22 amendment to the real-estate contract, properly interpreted, did not limit Ker-Seva's repair-or-replace obligation to the specific findings in the Green report.

We agree with Ganguly Holdings that Ker-Seva's appellate response is based on the affirmative defense of offset and that the defense was forfeited because Ker-Seva did not plead it. "The right of offset is an affirmative defense. The burden[s] of pleading offset and of proving facts necessary to support it are on the party making the assertion." *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). Because Ker-Seva did not plead offset, it cannot rely on Kaur Ltd.'s payment to Ganguly as an offset against Ganguly Holdings' damages.

At oral argument, Ker-Seva asserted that Ganguly Holdings forfeited Ker-Seva's pleading defect by not raising it until its appellate reply brief. We disagree.

–14–

Ganguly Holdings' opening appellate brief addressed every matter raised by the trial-court pleadings, and Ganguly Holdings permissibly addressed the unpleaded issue of offset after Ker-Seva raised it in appellees' brief. *See* TEX. R. APP. P. 38.3 ("The appellant may file a reply brief addressing any matter in the appellee's brief.").

Ker-Seva also argued that offset was tried by consent, noting that appellants themselves introduced the $85,000 check into evidence. But trial by consent cannot be based on evidence that is relevant to a pleaded issue. *See Garcia v. Nunez*, No. 05-17-00631-CV, 2018 WL 6065254, at *9 (Tex. App.—Dallas Nov. 20, 2018, no pet.) (mem. op.). Here, the check was relevant to Ker-Seva's pleaded defense of accord and satisfaction. *See Pickering v. First Greenville Nat'l Bank*, 495 S.W.2d 16, 19 (Tex. App.—Dallas 1973, writ ref'd n.r.e.) (accord and satisfaction requires proof of a new contract in which parties agreed to the discharge of an existing obligation by means of a lesser payment tendered and accepted).

We decide that Ganguly Holdings conclusively proved that it suffered some damages from Ker-Seva's contract breach. Given the varying estimates of repair costs admitted into evidence, however, we decide that Ganguly Holdings did not conclusively prove the amount of its damages. *See Smith v. Kinslow*, 598 S.W.2d 910, 913 (Tex. App.—Dallas 1980, no writ) (when defendant fails to perform promise to make repairs, reasonable cost of obtaining repairs elsewhere is a proper measure of contract damages).

## 2. Analysis of Affirmative Defenses

Ganguly Holdings also argues that there is no evidence to support the two affirmative defenses that Ker-Seva pleaded: waiver, and accord and satisfaction. We note that Ker-Seva does not argue on appeal that the trial judge's judgment against Ganguly Holdings can be affirmed based on these defenses, but in the absence of findings of fact and conclusions of law we must consider them because the trial judge may have relied on them. We conclude that Ganguly Holdings is correct.

"Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with asserting that right." *Christensen v. Chase Bank USA, N.A.*, 304 S.W.3d 548, 554 (Tex. App.—Dallas 2009, pet. denied). Ganguly Holdings argues that there is no evidence that it intentionally relinquished its right to recover damages for Ker-Seva's breach, nor is there any evidence that it engaged in any intentional conduct inconsistent with that right. After reviewing the record, we agree. The only evidence we see that could potentially support waiver is the $85,000 check that Ganguly accepted from Kaur Ltd. But we conclude that this evidence does not suffice. Although the check bears the notation "For KERSEVA DEBT," that notation does not indicate that the funds are being offered as payment in full; thus Ganguly's acceptance of the check, without more, is no evidence of intent to relinquish Ganguly Holdings' claim against Ker-Seva or of intentional conduct inconsistent with asserting that claim. Thus, there is legally insufficient evidence to support an implied finding of waiver.

Ker-Seva's accord-and-satisfaction defense fails for a similar reason. Accord and satisfaction requires proof of a new contract in which the parties agree to the discharge of an existing obligation by means of a lesser payment tendered and accepted. *Pickering*, 495 S.W.2d at 19. Here, there is no evidence that the parties agreed that Ker-Seva's contractual obligations would be discharged by the $85,000 payment. Thus, there is legally insufficient evidence to support an implied finding of accord and satisfaction.

### 3. Conclusion

We sustain appellants' first issue. Ganguly Holdings conclusively established the elements of its breach-of-contract claim but did not conclusively establish a specific amount of damages, so we remand rather than render judgment in its favor. *See Int'l Bus. Machs. Corp.*, 573 S.W.3d at 236. And because Ker-Seva contested liability in the trial court, we remand for a new trial as to both liability and damages. *See id.*; *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam); *see also* TEX. R. APP. P. 44.1(b).

**B.      Issue Two:  Is the evidence legally or factually insufficient to support the trial judge's implied findings against TD Childcare on its breach-of-fiduciary-duty claims against appellees?**

In appellants' second issue, TD Childcare argues that the evidence is legally or factually insufficient to support the trial judge's implied findings that appellees did not breach fiduciary duties owed to TD Childcare. TD Childcare further argues

–17–

that the evidence established that appellees' fiduciary breaches caused damages of $27,272.58.

At the outset, we note that it is not clear that the trial judge actually rejected TD Childcare's fiduciary-duty claims against Ker-Seva and Ker-Seva Management. The judgment awards TD Childcare roughly $40,000 against the Ker-Seva entities, jointly and severally, and it does not specify which of TD Childcare's claims support the award. There are no findings of fact or conclusions of law to resolve the question. However, the take-nothing judgment in Jawanda's favor does require implied findings against TD Childcare on its fiduciary-duty claim against him, and for the sake of analysis we will assume without deciding that the trial judge also rejected TD Childcare's fiduciary-duty claims against the Ker-Seva entities.

TD Childcare's argument runs as follows:

- Although the transaction closed on July 21, 2017, the parties agreed that appellees would continue to operate the school through the end of July.

- Appellees further agreed that they would collect any tuition payments for August 2017 tuition on behalf of TD Childcare.

- This agreement established an agency relationship and thus imposed a fiduciary duty on appellees.

- Appellees breached their fiduciary duty by collecting August tuition payments totaling $27,272.58 and refusing to remit that sum to TD Childcare.

We conclude that TD Childcare's argument fails at step two because the evidence does not establish with the necessary certitude that the parties agreed that

appellees would collect August tuition payments on TD Childcare's behalf. Thus, the trial judge could permissibly determine that appellees did not owe TD Childcare a fiduciary duty under an agency theory.

In this case, TD Childcare relies on the following testimony by Ganguly to establish the existence of its agreement with appellees:

> Q. Did the defendants agree to collect those August tuition payments on behalf of TD Childcare?
>
> A. Yes.

But at another point in the trial, Ganguly's testimony indicated that the parties had a different agreement about how the parties would handle school revenues:

> Q. Until August 1, 2017—between July 21, 2017 [the closing date], and July 31, 2017, who was occupying the building?
>
> A. Ker-Seva.
>
> Q. And was this by agreement?
>
> A. Yes.
>
> Q. How did this agreement come about?
>
> A. Mr. Jawanda wanted to close the month [of July] under his books, and he proposed that, and I didn't see a problem with that. So I was all right with that.
>
> Q. And did you and Mr. Jawanda talk about what would happen with the operating expenses at the time?
>
> A. Yes. So, essentially, all revenues that he would collect for his duration of servicing, which was through July 31st, would belong to him, and that he would pick up all the expenses during that duration as well. So he gets all the revenues, and he picks up all the expenses through July 31st, and, thereafter, I get all the revenues, and I get—I pick up all the expenses.

This testimony contradicts Ganguly's testimony that appellees would collect revenues for August tuition on TD Childcare's behalf. Moreover, Ganguly's testimony in support of the agreement was a one-word answer to a general, leading question. In our view, this does not satisfy the "clear, positive, [and] direct" standard for binding testimony set forth in *City of Keller*, 168 S.W.3d at 820. Under these circumstances, the trial judge was entitled to assess Ganguly's credibility and accept all, none, or any part of his testimony. *See Weisfeld*, 162 S.W.3d at 380–81. The judge could have credited Ganguly's testimony that the parties agreed that the Ker-Seva entities could keep all revenues they received in July—including any revenues tendered for August tuition payments—and thus concluded that there was no agreement that the Ker-Seva entities would pay August tuition payments to TD Childcare.

We conclude that the trial judge's implied finding that appellees did not owe TD Childcare fiduciary duties in connection with August tuition payments is supported by legally and factually sufficient evidence. Accordingly, we overrule appellants' second issue on appeal.

**C.    Issue Three:  Is the evidence legally or factually insufficient to support the trial judge's implied finding that the Ker-Seva entities did not breach a contract to pay August tuition payments to TD Childcare?**

In appellants' third issue, TD Childcare argues that the trial judge erred by failing to award TC Childcare $27,272.58 against the Ker-Seva entities for breach of contract. Like appellants' second issue, this issue is based on TD Childcare's

–20–

allegation that appellees agreed to pay TD Childcare any payments that appellees received for August tuition. TD Childcare argues that it established the elements of its contract claim and that appellees produced no evidence of its affirmative defenses of waiver and accord and satisfaction.

At the outset, we note that it is not clear that the trial judge rejected TD Childcare's contract claim against the Ker-Seva entities for the August tuition payments. The judgment awards TD Childcare roughly $40,000 against the Ker-Seva entities, jointly and severally, and it does not specify which of TD Childcare's claims support the award. There are no findings of fact or conclusions of law to resolve the question. Nevertheless, we will assume for the sake of our analysis that the trial judge ruled against TD Childcare on its contract claim for the $27,272.58 in August tuition payments.

We reject TC Childcare's argument for the same reasons we overruled appellants' second issue, *supra*. As explained above, TD Childcare did not prove, either conclusively or by the great weight and preponderance of the evidence, that the parties agreed that appellees would collect August tuition payments on TD Childcare's behalf.

We conclude that the trial judge's implied finding that there was no agreement whereby appellees were obliged to collect August tuition payments on TD Childcare's behalf is supported by legally and factually sufficient evidence. Accordingly, we overrule appellants' third issue on appeal.

**D. Issue Four: Is the evidence legally or factually insufficient to support the trial judge's implied findings against TD Childcare on its fraud claim against Jawanda?**

In appellants' fourth issue, TD Childcare argues that the evidence is legally or factually insufficient to support the trial judge's implied findings against TD Childcare on its fraud claim against Jawanda. TD Childcare further argues that the evidence establishes that Jawanda's fraud caused TD Childcare damages of $40,032.92.

The elements of fraud are (1) a material misrepresentation that (2) was either known to be false when made or was asserted without knowledge of its truth, (3) was intended to be acted upon, (4) was relied upon, and (5) caused injury. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

TD Childcare's fraud theory is based on a statement Jawanda made in an email chain generated in late June 2017. In the first email, an employee of appellants' lender asked Ganguly how he intended to account for security deposits for the school's current students and whether the deposits were recorded on the balance sheet. Ganguly forwarded the email to Agrawal along with Ganguly's own comments that parents paid deposits of $450 upon admission and that he could not see the deposits on the appellees' bank statements. Agrawal forwarded the chain to Jawanda with a request for help. Jawanda replied, "Deposits are treated as tuition income and taxed as such. Most parents don't pay since it is waived. It becomes difficult to keep tap [sic] on it since kids typically stay with school 3-5 years and

some even more." Finally, Agrawal forwarded the entire chain, with Jawanda's response, to Ganguly. TD Childcare argues that other evidence established that Jawanda's answer was false, that outstanding tuition deposits created a $40,032.92 liability for the school, and that TD Childcare justifiably relied on Jawanda's representation by paying the full price for the school's assets. Thus, TD Childcare states, Jawanda's fraud caused TD Childcare damages of $40,032.92.[1]

TD Childcare's appellate argument depends entirely on this alleged fraudulent statement by Jawanda: "Most parents don't pay [a tuition deposit] since it is waived." Although TD Childcare asserts that the evidence conclusively proved the falsity of this statement, we disagree. TD Childcare's record reference for that assertion refers only to the email chain itself, which contains no evidence of falsity. We have examined every record reference TD Childcare provides in arguing its fourth issue, and the only evidence of falsity we see is a demand letter from appellants' lawyer to appellees. The demand letter contains this statement: "Following the sale of the business, when TD Childcare had access to account level financial information, it was discovered that with the exception of very few accounts, all parents had actually paid the tuition deposits to Ker-Seva." Although this statement appears to contradict Jawanda's account, we do not think that this hearsay statement, found in a demand letter and based on unspecified financial information, is the kind of evidence that a

---

[1] This is the exact amount of damages that the trial judge awarded TD Childcare against Ker-Seva and Ker-Seva Management on an unspecified legal theory.

factfinder is bound to accept as true. *See City of Keller*, 168 S.W.3d at 820 ("Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted.") (footnote omitted).

We also conclude that the trial judge reasonably could have rejected TD Childcare's evidence of the essential element that it relied on Jawanda's statement. Ganguly testified that TD Childcare would not have paid the price it did if it had known the truth about the outstanding tuition deposits. But the trial judge was not required to credit this self-serving testimony, which was not readily controvertible. *See id*. Moreover, other circumstances could have led the trial judge to discount Ganguly's testimony, such as the relatively small amount of deposits compared to the total transaction price of $3,785,000.

We conclude that the trial judge's rejection of TD Childcare's fraud claim against Jawanda is supported by legally and factually sufficient evidence. Accordingly, we overrule appellants' fourth issue on appeal.

## IV.  CONCLUSION

We reverse the trial court's judgment to the extent it orders Ganguly Holdings to take nothing on its claim against Ker-Seva for breach of the real-estate contract.

We affirm the remainder of the trial court's judgment, and we remand the case to the trial court for further proceedings consistent with this opinion.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

200124F.P05

–25–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

GANGULY HOLDINGS, L.L.C.
AND TD CHILDCARE, L.L.C.,
Appellants

No. 05-21-00124-CV     V.

KER-SEVA LTD., KER-SEVA
MANAGEMENT, LTD. CO., AND
JASTINDER JAWANDA, Appellees

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-03979-
2018.
Opinion delivered by Justice Garcia.
Justices Molberg and Reichek
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** the trial court's judgment to the extent it orders appellant Ganguly Holdings, L.L.C. to take nothing on its claim against appellee Ker-Seva Ltd. entitled "Breach of Real Estate Contract" in appellants' Third Amended Petition, and we **REMAND** for further proceedings as to that claim. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 29th day of July 2022.